# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

REPUBLICAN PARTY OF NEW MEXICO,
REPUBLICAN PARTY OF DONA ANA COUNTY,
REPUBLICAN PARTY OF BERNALILLO
COUNTY, NEW MEXICO TURN AROUND,
NEW MEXICANS FOR ECONOMIC RECOVERY
PAC, HARVEY YATES, ROD ADAIR, CONRAD
JAMES, HOWARD JAMES BOHLANDER, AND
MARK VETETO,

        Plaintiffs,

v.                                                                       NO. 11-CV-900 WJ/KBM

GARY KING, in his official capacity, New Mexico
Attorney General, DIANNA DURAN, in her official
capacity, New Mexico Secretary of State, and District
Attorneys KARI BRANDENBURG, JANETTA
HICKS, AMY ORLANDO, and ANGELA R.
PACHECO, in their official capacities,

        Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

THIS MATTER comes before the Court on Plaintiffs' Motion for Preliminary Injunction (**doc. 9**) filed October 12, 2011. Plaintiffs seek a preliminary injunction against enforcement of certain provisions of the New Mexico Campaign Reporting Act (the "Act") codified at N.M. Stat. § 1-19-25 *et seq*. (1978). Having considered the parties' written and oral arguments and the applicable law, the Court **GRANTS** Plaintiffs' motion in part, and hereby issues this Preliminary Injunction.

**BACKGROUND**

**I. The New Mexico Campaign Reporting Act**.

The Act was passed in 2009. There are three provisions of the Act which are at issue in this litigation. First, the Act prohibits persons[1] from making contributions greater than $5,000 to political committees,[2] including political parties (N.M. Stat. § 1-19-34.7(A)(1)); second, it prohibits political committees from making contributions greater than $5,000 to other political committees or candidates (*id.* at 34.7(A)(2)); and finally it prohibits both persons and political committees from soliciting or accepting contributions greater than $5,000 (*id.* at 34(C)).

**II. The Parties**.

**The Plaintiffs are:**

- Plaintiff Republican Party of New Mexico ("NM-GOP"), is registered with the Secretary of State as a political party headquartered in Albuquerque, Bernalillo County, New Mexico;

- Plaintiff Republican Party of Dona Ana County and the Republican Party of Bernalillo County ("Local Parties"), political parties independent of NM-GOP or any other party;

- Plaintiff New Mexicans for Economic Recovery Political Action Committee ("NMER PAC"), a political committee registered with the Secretary of State and headquartered in Albuquerque, Bernalillo County, New Mexico, which was established solely for the purpose of making independent expenditures;

- Plaintiff New Mexico Turn Around ("NMTA"), is registered with the Secretary of State as a political committee headquartered in Albuquerque, Bernalillo County, New Mexico, which engages in both coordinated and independent expenditures, earmarking donations

---

[1]The Act defines "persons" as "an individual or entity." N.M. Stat. § 1-19-26(K).

[2]The Act defines "political committees" as "two or more persons, other than members of a candidate's immediate family or campaign committee or a husband and wife who make a contribution out of a joint account, who are selected, appointed, chosen, associated, organized or operated primarily for a political purpose" including: "(1) political parties, political action committees or similar organizations"; "(2) a single individual whose actions represent that the individual is a political committee"; and "(3) a person or an organization of two or more persons that within one calendar year expends funds in excess of five hundred dollars ($500) to conduct an advertising campaign for a political purpose." N.M. Stat. § 1-19-26(L).

    for one or the other and segregating the funds;

- Plaintiff Harvey Yates is an individual who resides in Albuquerque, Bernalillo County, New Mexico.

- Plaintiff Rod Adair is an individual who resides in Roswell, Chaves County, New Mexico.

- Plaintiff Conrad James is an individual who resides in Albuquerque, Bernalillo County, New Mexico.

- Plaintiff Howard James Bohlander is an individual who resides in Santa Fe, Santa Fe County, New Mexico.

- Plaintiff Mark Veteto is an individual who resides in Hobbs, Lea County, New Mexico.

**The Defendants are:**

- New Mexico Attorney General, Defendant Gary King, who has enforcement power granted by the Act to "institute a civil action in district court," assess fines, and institute criminal prosecutions for violations of the Act.  N.M. Stat. §§ 1-19-34.6(A)–(C).

- New Mexico Secretary of State, Defendant Dianna Duran, who has enforcement power granted by the Act to "adopt and promulgate rules and regulations" in order "to implement the provisions of the [Act];" "initiate investigations to determine whether any provision of the [Act] has been violated," and to "conduct[ ] a thorough examination . . . of reports filed" in order "to determine compliance with the provisions of the [Act.]"  *Id.* at §§ 1-19-26.2, -32.1, -34.4.

- Defendant District Attorneys, Kari Brandenburg, Janetta Hicks, Amy Orlando, and Angela R. Pacheco, have enforcement power granted by the Act to "institute a civil action in district court" and assess fines for violations of the Act.  *Id.* at §§ 1-19-34.6(B)–(C).  These Defendants also have authority to institute criminal prosecutions for violations of the Act.  *Id.* at § 1-19-36(A).

    Two of the six Defendants in the case, Secretary of State Dianna Duran and Third Judicial District Attorney Amy Orlando, have stipulated to the preliminary injunction, conceding that Plaintiffs have satisfied their burden and shown entitlement to the requested relief.  (Doc.

20.)  The other four Defendants contest the issuance of a preliminary injunction.[3]

Plaintiffs seek a preliminary injunction against enforcement of the Act. They desire to engage in various activities prohibited by the aforementioned provisions of the Act, which fall—for purposes of the present analysis—into three categories: making and accepting contributions to be used (1) in state campaigns, (2) for independent expenditures, and (3) in federal campaigns.

A. State Campaigns

- Plaintiff Harvey Yates, Jr., an individual, desires to make a contribution to NM-GOP exceeding $5,000, and NM-GOP desires to solicit and accept that contribution.

- NM-GOP desires to make contributions greater than $5,000 to Plaintiffs Republican Party of Dona Ana County and the Republican Party of Bernalillo County (the "Local Parties"), and the Local Parties desire to solicit and accept those contributions.

- NM-GOP desires to make contributions greater than $5,000 to Plaintiffs Rod Adair and Conrad James, who are candidates for state office in the 2012 elections.

B. Independent Expenditures

- Plaintiff NMER PAC desires to solicit and accept contributions greater than $5,000 to be used for independent expenditures, and Plaintiff Mark Veteto desires to make such a contribution.

- Plaintiff NMTA desires to solicit and accept contributions of more than $5,000 to be used for independent expenditures, and Plaintiff Howard Bohlander desires to make such a contribution, to be designated for use in independent expenditures and kept segregated from any funds used for coordinated expenditures or contributed to candidates.

C. Federal Campaigns

- Plaintiff NM-GOP desires to solicit and accept funds greater than $5,000 from the Republican National Committee ("RNC") and other individuals, entities, and political committees, which funds it would use to support candidates for election to federal office.

---

[3] In the interests of clarity, the four Defendants who contest the issue of a preliminary injunction will be referred to simply as "Defendants," and if the other two Defendants are meant, such reference will be made clear.

## ANALYSIS

**I. Standing.**

Article III of the United States Constitution restricts the judicial power to adjudicating "cases" and "controversies." U.S. Const. art. III, § 2. Therefore, a plaintiff must demonstrate that it possesses proper standing by showing that:

> (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Friends of the Earth v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). Nevertheless, "a plaintiff need not 'expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights.'" *Initiative and Referendum Inst. v. Walker*, 450 F.3d 1082, 1087–88 (10th Cir. 2006) (quoting *Steffel v. Thompson*, 415 U.S. 452, 459 (1974)).

Plaintiffs collectively bring suit against Defendants in their official capacities seeking declaratory and injunctive relief prohibiting Defendants from enforcing the contribution limits in the Act on the basis that these contribution limits unconstitutionally restrict Plaintiffs' First Amendment free speech and association rights by preventing them from engaging in their desired speech and association. Considering that 2012 is a presidential election year, Plaintiffs also contend that they have a limited time-frame in which their desired speech and association can have influence and thus a preliminary injunction should immediately issue so that Plaintiffs' desired First Amendment activities will not be stifled.

The Tenth Circuit has recognized that ". . . a chilling effect on the exercise of a plaintiff's First Amendment rights may amount to a judicially cognizable injury in fact, as long as it

'arise[s] from an objectively justified fear of real consequences.'" *Walker*, 450 F.3d at 1088 (quoting *D.L.S. v. Utah*, 374 F.3d 971, 975 (10th Cir. 2004)). Plaintiffs' verified Complaint sufficiently alleges that they have a justified fear of legal enforcement of the Act's contribution-limit provisions. Accordingly, Plaintiffs have established Article III standing to challenge the provisions of the Act at issue in this litigation.

## II. Standard for Preliminary Injunction.

The Tenth Circuit requires that a plaintiff seeking a preliminary injunction establish that: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of preliminary injunctive relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest. *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1208 (10th Cir. 2009) (citing *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). Defendants have thus far contested only the "success on the merits" prong in their brief and oral argument, and so the Court considers Defendants to have conceded that Plaintiffs have established the other three prongs necessary to obtain a preliminary injunction. Moreover, the Court independently finds based on the record developed in this case thus far that Plaintiffs have established (1) that they are likely to suffer irreparable harm in the absence of preliminary injunctive relief, (2) that the balance of equities tips in their favor, and (3) that an injunction is in the public interest. Thus, the Court's decision to issue a preliminary injunction turns on the prong of likelihood of success on the merits, and the Court's analysis will subsequently focus on this prong.

## III. Likelihood of Success on the Merits.

In *Arizona Free Enterprise Club's Freedom Club PAC v. Bennett*, the United States Supreme Court's most recent opinion on the intersection between campaign finance laws and the First Amendment, Chief Justice John Roberts writing for the majority succinctly summarized

controlling Supreme Court precedent in this area of the law:

> "Discussion of public issues and debate on the qualifications of candidates are integral to the operation" of our system of government. *Buckley v. Valeo*, 424 U.S. 1, 14, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976) (per curiam). As a result, the First Amendment "'has its fullest and most urgent application' to speech uttered during a campaign for political office." *Eu v. San Francisco County Democratic Central Comm.*, 489 U.S. 214, 223, 109 S.Ct. 1013, 103 L.Ed.2d 271 (1989) (quoting *Monitor Patriot Co. v. Roy*, 401 U.S. 265, 272, 91 S.Ct. 621, 28 L.Ed.2d 35 (1971)). "Laws that burden political speech are" accordingly "subject to strict scrutiny, which requires the Government to prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest." *Citizens United v. Federal Election Comm'n*, 558 U.S. ___, ___, 130 S.Ct. 876, 898, 175 L.Ed.2d 753 (2010) (internal quotation marks omitted); *see Federal Election Comm'n v. Massachusetts Citizens for Life, Inc.*, 479 U.S. 238, 256, 107 S.Ct. 616, 93 L.Ed.2d 539 (1986).
>
> Applying these principles, we have invalidated government-imposed restrictions on campaign expenditures, *Buckley*, *supra*, at 52–54, 96 S.Ct. 612, restraints on independent expenditures applied to express advocacy groups, *Massachusetts Citizens for Life*, supra, at 256–265, 107 S.Ct. 616, limits on uncoordinated political party expenditures, *Colorado Republican Federal Campaign Comm. v. Federal Election Comm'n*, 518 U.S. 604, 608, 116 S.Ct. 2309, 135 L.Ed.2d 795 (1996) (opinion of BREYER, J.) (*Colorado I*), and regulations barring unions, nonprofit and other associations, and corporations from making independent expenditures for electioneering communication, *Citizens United* at ___, 130 S.Ct., at 917.
>
> At the same time, we have subjected strictures on campaign-related speech that we have found less onerous to a lower level of scrutiny and upheld those restrictions. For example, after finding that the restriction at issue was "closely drawn" to serve a "sufficiently important interest," *see, e.g.*, *McConnell v. Federal Election Comm'n*, 540 U.S. 93, 136, 124 S.Ct. 619, 157 L.Ed.2d 491 (2003) (internal quotation marks omitted); *Nixon v. Shrink Missouri Government PAC*, 528 U.S. 377, 387–388, 120 S.Ct. 897, 145 L.Ed.2d 886 (2000) (internal quotation marks omitted), we have upheld government-imposed limits on contributions to candidates, *Buckley*, *supra*, at 23–35, 96 S.Ct. 612, caps on coordinated party expenditures, *Federal Election Comm'n v. Colorado Republican Federal Campaign Comm.*, 533 U.S. 431, 437, 121 S.Ct. 2351, 150 L.Ed.2d 461 (2001) (*Colorado II*), and requirements that political funding sources disclose their identities, *Citizens United*, *supra*, at ___–___, 130 S. Ct. at 916–917.

___ U.S. ___, 131 S. Ct. 2806, 2816–17 (2011).

Plaintiffs urge this Court to apply strict scrutiny analysis to the Act's contribution limits

7

arguing that the Supreme Court's holding in the *Citizens United* case established strict scrutiny for all laws placing any burden on political speech, including contribution limits. The above quoted language from *Arizona Free Enterprise Club* repudiates that argument. The Supreme Court itself interprets the holding of *Citizens United* as consistent with the continued application of "closely drawn" scrutiny to contribution limits. *Arizona*, 131 S. Ct. at 2816–17.

Therefore, this Court rejects Plaintiffs' argument and, consistent with controlling Supreme Court precedent, will require that the contribution limits of the Act be "'closely drawn' to support a 'sufficiently important interest.'" *Id.* at 2817. The specific activities that Plaintiffs desire to undertake all involve the giving and receiving of contributions. Accordingly, these activities are best classified for purposes of this analysis according to the intended destination of the contributions, because this destination governs the inquiry. For the sake of the current analysis, Plaintiffs challenge the Act's limitation of contributions that are destined first for general use in campaigns for state office, second for use in independent expenditures, and third for use in federal campaigns.

### A. Contributions to Be Used in Non-independent Expenditures in State Campaigns

Plaintiffs variously desire to solicit, accept, and make contributions to political parties, with such funds to be used generally in campaigns for state office. The funds in this category are not destined solely for independent expenditures, but could involve either coordinated expenditures or contributions directly to candidates. Plaintiffs challenge the Act's $5,000 contribution limit as unconstitutional as applied to these contribution activities.

The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. amend. I. The Fourteenth Amendment incorporates the First Amendment and applies it to State and local governments. *Gitlow v. New York*, 268 U.S. 652,

666 (1925). Political campaign contributions are "symbolic" speech and "general expression[s] of support," *Buckley*, 424 U.S. at 21, which "lie closer to the edges than to the core of political expression," *FEC v. Beaumont*, 539 U.S. 146, 148 (2003).

Plaintiffs argue first that the NM-GOP's prohibition of earmarking contributions for particular candidates suffices to eliminate the state's anticorruption interest. Second, Plaintiffs argue that the contribution limits are invalid as applied to the political-party Plaintiffs because the Act applies the same contribution limit to political parties as to individuals and other non-party entities.

*i. Effect of NM-GOP's Non-earmarking Policy*

Plaintiffs argue that there is not a sufficient government interest to support the contribution limits as applied to Plaintiffs; they argue that NM-GOP's policy not to allow particular contributions to be earmarked for particular candidates breaks the link between contributors and candidates such that no corruption is possible, and that consequently there is no basis for limits at any stage in the monetary progression between contributors, the NM-GOP, other political parties, and finally candidates themselves.

The Supreme Court has held that the government's interest in preventing *quid pro quo* corruption or the appearance thereof is the only interest strong enough to justify contribution limits. *See Arizona*, ___ U.S. ___, 131 S. Ct. at 2825–29; *Citizens United*, 130 S. Ct. at 902–11; *FEC v. Nat'l Conservative PAC*, 470 U.S. 480, 496–97 (1985); *see also Wis. Right to Life State PAC v. Barland*, ___ F.3d ___, 2011 WL 6225138, *11 (7th Cir. 2011) ("It's worth pausing here to reiterate that preventing actual or apparent *quid pro quo* corruption is the only interest the Supreme Court has recognized as sufficient to justify campaign-finance restrictions."). Therefore, the Act's limits must be closely drawn to this interest in order to survive. If there is

no possibility of *quid pro quo* corruption attached to contributions, then a limit of such non-corrupting contributions would certainly fail "closely drawn" scrutiny.

While there is considerable appeal to Plaintiffs' argument that a non-earmarking policy breaks any corrupting link between contributor and candidate, that argument has been addressed and found wanting by the Supreme Court. The Court has stated that:

> The earmarking provision . . . would reach only the most clumsy attempts to pass contributions through to candidates. To treat the earmarking provision as the outer limit of acceptable tailoring would disarm any serious effort to limit the corrosive effects of . . . 'understandings' regarding what donors give what amounts to the party, which candidates are to receive what funds from the party, and what interests particular donors are seeking to promote.

*Colorado II*, 533 U.S. at 462 (internal quotations omitted); *see also Cal. Med. Ass'n v. FEC*, 453 U.S. 182, 198 (1981); *Buckley*, 424 U.S. at 38.

NM-GOP's policy of disallowing explicit earmarking is not enough to extinguish the state's interest in preventing corruption or the appearance of corruption. Therefore, the contribution limits in the Act as applied to Plaintiffs are no different than any other federal or state contribution limits which have been found to be closely drawn to the sufficiently important governmental interest of preventing corruption or the appearance of corruption. Plaintiffs have not provided this Court with a sufficient legal basis to veer from clearly established controlling precedent. Therefore, the Court rejects this aspect of Plaintiffs' argument.

*ii. Effect of Applying Same Limit to Individuals and Parties*

Plaintiffs argue that the Act cannot constitutionally subject political parties to the same contribution limit applied to individuals or other entities, in light of the particular importance of political parties in our electoral system. In particular, Plaintiffs rely on *Randall v. Sorrell*, 548 U.S. 230 (2006), for the proposition that a contribution-limiting law that fails to provide

privileged status to political parties cannot withstand constitutional scrutiny. While this argument also has considerable appeal, this Court does not read *Sorrell* as broadly as do Plaintiffs. *Sorrell* views the identical treatment of political parties and individuals not as a constitutional violation in itself, but only as "a further factor weighing against the constitutional validity of the contribution limits." *Id.* at 259. The *Sorrell* Court considered several other factors, including the extremity of the limit (only $400), and made no comment on whether the presence of any individual factor would be enough on its own to invalidate the statute. *Id.* at 258–61. Also, *Sorrell* was a plurality opinion of only three justices, and Plaintiffs offer no further support for the proposition that subjecting political parties and individuals to equal contribution limits, without more, violates the First Amendment. Accordingly, the Court rejects this aspect of Plaintiffs' argument.

      The Court notes that Plaintiffs' arguments relating to contribution limits among individuals, political parties, and candidates for state office, are in essence a request that this Court extend the logic in certain portions of *Citizens United* to invalidate contribution limits previously determined to be constitutional by the Supreme Court. This Court is sympathetic to the logic of Plaintiffs' argument; however, "[i]f a precedent of [the Supreme Court] has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals [and the District Court] should follow the case which directly controls, leaving [the Supreme Court] the prerogative of overruling its own decisions." *Agostini v. Felton*, 521 U.S. 203, 237 (1997) (quoting *Rodriquez de Quijas v. Shearson/Am. Exp., Inc.*, 490 U.S. 477, 484 (1989)); *see also Ognibene v. Parkes*, ___ F.3d ___, 2011 WL 6382451 *7 (2nd Cir. 2011) ("*Citizens United* left *Buckley* intact, and it is not for this Court to stretch *Citizens United*."). Therefore, this Court must rule in accordance with Supreme Court precedent directly on point

11

and not "stretch" the holding of *Citizens United*. If there is any tension between that precedent and the logic of *Citizens United*, it is for the Supreme Court to resolve. Therefore, the Court holds that the application of the Act's contribution limits to contributions to be used for non-independent expenditures in state campaigns is not unconstitutional, but is permissible under current Supreme Court precedent. Accordingly, Plaintiffs' request that Defendants be enjoined from enforcing the Act's contribution limits on political parties and individuals is DENIED.

        B. Contributions to Be Used for Independent Expenditures

Plaintiffs next argue that application of the Act's contribution limit to contributions designated for independent expenditures is unconstitutional. As discussed above, the only government interest capable of supporting political contribution limits is the prevention of corruption or the appearance of corruption. In *Citizens United*, the Supreme Court held as a matter of law that independent expenditures do not implicate the anti-corruption interest. *Citizens United*, 130 S. Ct. at 909. Therefore, New Mexico does not have an anti-corruption interest capable of justifying contribution limits if those contributions are to be used exclusively for independent expenditures. *See, e.g.*, *Wis. Right to Life State Political Action Committee v. Barland*, ___ F.3d ___, 2011 WL 6225138 (7th Cir. 2011); *Thalheimer v. City of San Diego*, 645 F.3d 1109 (9th Cir. 2011); *Long Beach Area Chamber of Commerce v. City of Long Beach*, 603 F.3d 684 (9th Cir. 2010); *SpeechNow.org v. FEC*, 599 F.3d 686 (D.C. Cir. 2010).

Despite Defendants' assertion to the contrary, the fact that the particular Plaintiffs here, NMER PAC and NMTA, may have close associations with a political party does not change the analysis. In *Colorado I*, the Supreme Court held that a political party may make independent expenditures, and those expenditures receive as much constitutional protection as those of any other entities. 518 U.S. at 618 ("We do not see how a Constitution that grants to individuals,

candidates, and ordinary political committees the right to make unlimited independent expenditures could deny the same right to political parties."). Since political parties legally can make independent expenditures, the mere fact that NMER PAC and NMTA are closely related to political parties does not affect the analysis regarding their ability to make independent expenditures.

Therefore, because no anti-corruption interest can justify limiting contributions to be used for independent expenditures, and because no other government interest suffices to justify contribution limits, the contribution limits in the Act are unconstitutional as applied to NMER PAC and NMTA for contributions segregated and designated for use as independent expenditures. Accordingly, Defendants are enjoined from enforcing the Act's contribution limits for segregated contributions used for independent expenditures.

### C. Contributions to Be Used in Federal Campaigns

Plaintiff NM-GOP desires to solicit and receive contributions to be used in campaigns of candidates for federal office. It argues that the Federal Election Campaign Act ("FECA"), 2 U.S.C. §§ 431 *et seq.*, which regulates federal campaign money, preempts the Act. Defendants appear to concede this issue: "Plaintiffs state, correctly, that the Federal Election Campaign Act pre-empts New Mexico's contribution limits in regards to federal candidates. In fact, New Mexico's Campaign Reporting Act explicitly excludes federal candidates from its applicability." (Doc. 15 at 3.) Defendants point to the application provision of the Act, which reads: "The provisions of the Campaign Reporting Act do not apply to any candidate subject to the provisions of the federal law pertaining to campaign practices and finance." N.M. Stat. § 1-19-37. Taking into consideration the language of the Act and of FECA, and also Defendants' concession, the Court determines that the Act does not impose limits on contributions of money

directed to candidates for federal elective offices, and that if it did it would be preempted by FECA. *See* 2 U.S.C. § 453(a) ("[T]he provisions of this Act, and of rules prescribed under this Act, supersede and preempt any provision of State law with respect to election to Federal office."); 11 C.F.R. § 108.7(b) ("Federal law supersedes State law concerning the . . . (3) Limitation on contributions and expenditures regarding Federal candidates and political committees."). Therefore, the court grants Plaintiffs a preliminary injunction against enforcement of the $5,000 contribution limit as to contributions directed towards the campaigns of candidates in federal elections.

## CONCLUSION

For the reasons discussed above, the Court GRANTS Plaintiffs' Motion for Preliminary Injunction in part as follows: Defendants are enjoined from enforcing the Act's $5,000 contribution limit against contributions to be used in federal campaigns, such as Plaintiff NM-GOP's desired solicitation of contributions exceeding $5,000 from the Republican National Committee to be used for candidates seeking federal office; and Defendants are enjoined from enforcing the Act's $5,000 contribution limit against contributions to be used exclusively for independent expenditures, such as any funds that Plaintiffs Mark Veteto and Howard Bohlander desire to contribute to Plaintiffs NMER PAC and NMTA to be used for independent expenditures.

The Court DENIES Plaintiffs' Motion for Preliminary Injunction in part as follows: Defendants are not enjoined from enforcing the Act's $5,000 contribution limit for contributions made by individuals or political parties to be used for coordinated expenditures or to be contributed to candidates for state office, such as Plaintiff Harvey Yates's desire to contribute more than $5,000 to NM-GOP, Plaintiff NM-GOP's desire to contribute more than $5,000 to the

Local Party Plaintiffs, and Plaintiff NM-GOP's desire to make contributions greater than $5,000 to Plaintiff candidates Rod Adair and Conrad James.

 Finally, the Court notes that as of the date of filing of this Preliminary Injunction, Iowans have already caucused and soon voters in New Hampshire, South Carolina and other early primary states will be heading to the polls to cast their votes. Considering that the 2012 election cycle is in full swing and considering that the desired activities of Plaintiffs involve political free speech and association rights during an election year, this Preliminary Injunction shall remain in effect pending appeal unless stayed by the Tenth Circuit Court of Appeals.

 **SO ORDERED**.

_____
UNITED STATES DISTRICT JUDGE