IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

REPUBLICAN PARTY OF NEW MEXICO, *et al.*,

      Plaintiffs,

vs.                                                     No. 11-cv-900-WJ-KBM

HECTOR BALDERAS, in his official capacity, New Mexico Attorney General; MAGGIE TOULOUSE OLVER, in her official capacity, New Mexico Secretary of State; and District Attorneys RAUL TORREZ, GERALD BYERS, and DIANNA LUCE, in their official capacities,

      Defendants.

**MEMORANDUM OPINION AND ORDER**
**DENYING DEFENDANTS' MOTION TO EXCLUDE OPINIONS OF**
**PLAINTIFFS' EXPERT JEFFREY MILYO, PH.D**

**THIS MATTER** comes before the Court following Defendants' Motion to Exclude Opinions of Plaintiffs' Expert Jeffrey Milyo, Ph.D, filed July 19, 2021 (Doc. 223). Dr. Milyo is a renowned political economist and campaign finance academic, and Plaintiffs seek to have Dr. Milyo testify on the question of whether New Mexico campaign finance laws "reduce quid pro quo corruption or the appearance thereof." Having considered the parties pleadings[1] and the applicable law, the Court finds that the motion is not well taken and is, therefore, **DENIED**.

BACKGROUND

In the wake of the Supreme Court's decision in *Citizens United*, Plaintiffs brought the instant action challenging portions of New Mexico's Campaign Reporting Act under the First and

---
[1] Plaintiffs' Response (Doc. 226, 9/30/2021); Defendants' Reply (Doc. 229, 10/28/2021).

1

Fourteenth Amendments, the Supremacy Clause, and 42 U.S.C. § 1983. *See Citizens United v. FEC*, 558 U.S. 310 (2010); NMSA 1978, §§ 1–19–25 to 1-19-36. Relevant New Mexico law has since changed, and Plaintiffs have accordingly filed their Third Amended Verified Complaint challenging New Mexico's contribution limits as applied to:

- contributions made to a political party;
- contributions made by a national political party to a state party;
- contributions made by a state party to county parties;
- contributions a political party makes to its candidates or candidates' political committees; and
- contributions a political party makes to its governor candidates' political committees.

To survive constitutional scrutiny, New Mexico's contribution limits must further a sufficiently important governmental interest, proven by establishing that they prevent "quid-pro-quo corruption or its appearance." *Id.* This is an important factual question to be answered at trial.

As such, Plaintiffs have proffered Dr. Jeffrey Milyo as an expert witness to opine that New Mexico's contribution limits do not prevent quid-pro-quo corruption or its appearance as perceived by residents. With thirty years of experience in American political economy, Dr. Milyo is Google Scholar's most-cited author in the fields of campaign finance and political corruption. He currently serves as Department of Economics chairman and professor at the University of Missouri and has held a variety of appointments, fellowships, and expert roles related to election reform and campaign finance.

For the litigation at bar, Dr. Milyo has prepared an expert report (the "Milyo Report") detailing his opinions on the effects of New Mexico laws. In arriving at his conclusions, he relies primarily on his extensive academic experience, studies, surveys, peer-reviewed literature, and data. Importantly, the overwhelming majority of studies on which he relies derive data from states

around the country—and are not specifically tailored to New Mexico. In response, Defendants have filed a motion to exclude his report, citing its lack of relevance and reliability. The Court now assesses its admissibility.

## DISCUSSION

Federal Rule of Evidence 702 controls the admission of expert witness testimony. It provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) The testimony is based on sufficient facts or data;
>
> (c) The testimony is the product of reliable principles and methods; and
>
> (d) The expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. This rule "imposes on a district court a gatekeeper obligation to 'ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.'" *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1221 (10th Cir. 2003) (quoting *Daubert v. Merrell Dow. Pharm., Inc.*, 509 U.S. 579, 589 (1993)). The purpose of such inquiry is to "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999). Overall, the Court has broad discretion in determining whether to exclude an expert's proposed testimony. *See United States v. McSwain*, 197 F.3d 472, 482 (10th Cir. 1999).

To perform its gatekeeping function, the Court generally takes two steps. First, it determines whether the expert is qualified by "knowledge, skill, experience, training, or education" to render an opinion. *See* Fed. R. Evid. 702. The parties do not dispute Dr. Milyo's qualifications, so the Court turns its focus to the second step which is to decide whether his opinions are sufficiently "reliable." *See United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (en banc). As opposed to a traditional analysis employing the *Daubert* factors, the parties have conformed their arguments to Rule 702's four elements. Therefore, the Court addresses each in turn, recognizing that the second, third, and fourth elements encompass the Court's duty to determine whether Dr. Milyo's testimony is sufficiently reliable.

I. **Dr. Milyo's testimony would assist the trier of fact to determine a fact in issue.**

First, the expert testimony must help the trier of fact to understand the evidence or to determine a fact in issue, which goes primarily to relevance. Fed. R. Evid. 702(a); *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591 (1993). To assist the trier of fact, expert testimony "must logically advance a material aspect of the case and be sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *United States v. Garcia*, 635 F.3d 472, 476 (10th Cir. 2011). "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert*, 509 U.S. at 591.

Defendants focus the Court's attention on a certain aspect of relevancy: the existence of a "valid scientific connection" between the testimony and the pertinent inquiry. In explaining this phrase, the Supreme Court opined in *Daubert*:

> The consideration has been aptly described by Judge Becker as one of "fit." *Ibid.* "Fit" is not always obvious, and scientific validity for one purpose is not necessarily scientific validity for other, unrelated purposes. See Starrs, *Frye v. United States* Restructured and Revitalized: A Proposal to Amend Federal Evidence Rule 702, 26 Jurimetrics J. 249, 258 (1986). The study of the phases of the moon, for example, may provide valid scientific "knowledge" about whether a certain night was dark,

> and if darkness is a fact in issue, the knowledge will assist the trier of fact. However (absent creditable grounds supporting such a link), evidence that the moon was full on a certain night will not assist the trier of fact in determining whether an individual was unusually likely to have behaved irrationally on that night. *Rule 702's "helpfulness" standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility.*

*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591–92 (1993) (emphasis added). Like the phases of the moon to one's tendency to behave irrationally, Defendants assert that there exists "simply too great an analytical gap" between Dr. Milyo's testimony and the factual question at hand. Conflating relevancy with reliability, Defendants attack the way by which Dr. Milyo reaches his conclusions in the Milyo Report to suggest that it is highly unreliable and thus, not helpful to the trier of fact.[2]

The Court finds Defendants' argument misplaced. The Milyo Report is based on relevant facts, peer-reviewed studies, and data in the case—all dealing with the likely effects of the New Mexico laws in question. While many of the citations underlying Dr. Milyo's opinions are his own scholarship, one might expect as much from a pre-eminent scholar on money in politics. As explained below, his reliance on a certain type of data—multi-state, multi-year studies—does not lead to a lack of a scientifically valid connection. *See Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 40–41 (2011). Money in politics is a highly subjective area of study, of which most people likely have minimal familiarity, and having Google Scholar's most-cited academic in the field of money in politics to explain the purported effects of campaign finance laws should certainly shed light on whether they affect quid-pro-quo corruption or the appearance thereof.

Therefore, the Court finds that Dr. Milyo's testimony would assist the trier of fact to determine the primary fact in question.

II. **Dr. Milyo's proposed testimony is reliable.**

---

[2] While reliability of testimony undoubtedly affects its helpfulness, this argument is better suited for elements (b), (c), and (d), where the Court assesses the reliability of Dr. Milyo's opinions. *See* Fed. R. Evid. 702(b)–(d).

The Court's second gatekeeping function is to evaluate the reliability of the expert's proposed testimony. *See United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (en banc). In evaluating reliability, the Court may consider the *Daubert* factors (to which the parties do not refer), but ultimately "the law grants a district court the same broad latitude when it decides *how* to determine reliability as it enjoys in respect to its ultimate reliability determination." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 142 (1999) (citing *General Electric Co. v. Joiner*, 522 U.S. 136, 143 (1997)). Accordingly, the Court assesses the Milyo Report and Dr. Milyo's underlying facts and data, the reliability of his methodology, and whether he reliably applied this methodology to the facts at bar. Fed. R. Evid. 702(b)–(d).

A.  **Dr. Milyo's opinions are based on sufficient facts or data.**

Under the Federal Rules of Evidence, the expert's proposed testimony must be based on sufficient facts or data. Fed. R. Evid. 702(b). For guidance on this element, both parties cite to Wright and Miller's Federal Practice and Procedure:

> An expert must base her opinion on at least the amount of data that a reliable methodology demands . . . The expert may properly base her opinion on something less than all the pertinent facts or data. Thus . . . sufficiency is a function of the nature and scope of the opinion offered, the quantity of data both available and pertinent to the issue at hand, and what is deemed sufficient by experts in the pertinent field when working outside the courtroom.

29 Fed. Prac. & Proc. Evid. § 6268.[3] In other words, an expert cannot "cherry pick[]' favorable data . . . but ignore[] a significant quantity of other important facts." *Id*; *see Smith v. Illinois Department of Transportation*, 936 F.3d 554 (7th Cir. 2019).

---

[3] *See also* Advisory Committee's Note, 2000 Amendment to Fed. R. Evid. 702 ("When facts are in dispute, experts sometimes reach different conclusions based on competing versions of the facts. The emphasis in the amendment on 'sufficient facts or data' is not intended to authorize a trial court to exclude an expert's testimony on the ground that the court believes one version of the facts and not the other.")

Defendants' argument boils down to three separate issues. First, whether reliance on national data—rather than New Mexico-specific data—is enough to support Dr. Milyo's conclusions about the effects of New Mexico laws. Second, whether this case is sufficiently similar to the federal district court case of *Many Cultures, One Message v. Clements* as precedent to exclude Dr. Milyo's testimony. 830 F. Supp. 2d 1111, 1141 (W.D. Wash. 2011). Third, whether Dr. Milyo's citations and portions of his testimony are too dissimilar from the underlying factual inquiry.

        **i.**      **National social science studies are enough to support Dr. Milyo's conclusions.**

Under this element, Defendants' most important contention is that Dr. Milyo "relies on very little data specific to New Mexico or the particular laws challenged in this lawsuit." Doc. 223 at 8. Defendants argue that the "mélange of laws assessed from around the country is not sufficient data, relevant to this case, to ground an admissible expert opinion." Doc. 223 at 9. In his report, the only New Mexico data Dr. Milyo cites is the criminal conviction of three state legislators, which Dr. Milyo even states was not intended as a "formal analysis," but rather as an "illustrative example." At his deposition, Dr. Milyo admitted that he did not recall any specific conversations to gather information specific to New Mexico, pointing instead to the totality of his citations to buttress his opinions.

Drawing from multi-year studies examining empirical data from all states, Dr. Milyo alleges that "the relevant social science literature provides no support for the contention that state campaign finance laws meaningfully reduce quid pro quo corruption or the appearance of corruption" and that "[t]here is absolutely no reason to think that the lessons from this research do not apply to New Mexico." Milyo Report, Ex. 31 at 6–7, 11. Dr. Milyo further explains how he arrives at his conclusions:

7

> [C]ontributors have an indirect relationship with candidates. If limits on direct contributions to candidates are ineffective, then it follows that limits that are at best tenuously related to potential quid pro quo relations will likewise be ineffective . . . . [P]olitics in New Mexico is not so uniquely corrupt that the general lessons from the social science research do not apply, or that the contribution limits to and from parties . . . have a dramatic effect that is not manifest by any other state campaign finance regulations in other states.

*Id.* While New Mexico-specific data would certainly bolster Dr. Milyo's analysis, primary reliance on such data seems infeasible here. With approximately 2.1 million people, New Mexico has a relatively small population—compared to, say, California with 39.5 million. *See* UNITED STATES CENSUS BUREAU, *2020 Census Apportionment Results* (April 26, 2021), https://www.census.gov/data/tables/2020/dec/2020-apportionment-data.html. This implies a much narrower state-level data set from which Dr. Milyo could deductively analyze the effects of the laws at issue here, thereby necessitating national data to fill the void. Political economists—particularly ones with three decades of experience in the field—would have reasonably relied on this type of data in reaching such an inference. *See Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 40–41 (2011); Fed. R. Evid. 703.[4] Had Defendants offered peculiarities distinguishing New Mexico politics from other states, the Court would have more serious doubts applying multi-state studies to the effects of New Mexico laws. In short, this lack of specific data goes more to the weight rather than the admissibility of Dr. Milyo's testimony.

      **ii.** ***Many Cultures, One Message* is distinguishable from the facts at hand.**

The parties vigorously debate the relevance and applicability of *Many Cultures, One Message v. Clements*—a case in which the United States District Court for the District of

---

[4] *See also Ferebee v. Chevron Chemical Co.*, 736 F.2d 1529, 1535 (D.C. Cir. 1984) ("[A] cause-effect relationship need not be clearly established by [additional] studies before a[n expert] can testify that, in his opinion, such a relationship exists. As long as the basic methodology employed to reach such a conclusion is sound . . . law does not preclude recovery until . . . science has had the time and resources to complete sophisticated . . . studies of the [laws at issue].").

8

Washington excluded Dr. Milyo's testimony under *Daubert*. 830 F.F. Supp. 2d 1111, 1141 (W.D. Wash. 2011), *aff'd in part & vacated in part on other grounds*, 520 F. App'x 517 (9th Cir. 2013). In that case, the plaintiffs challenged laws in the State of Washington requiring disclosure of grassroots lobbying contributions and sought Dr. Milyo to testify at trial. Several key considerations here distinguish *Many Cultures, One Message* from the case at bar.

First, the District of Washington Court found pertinent to its analysis that "grassroots lobbying and the impact of public disclosure thereon—even in a general sense—was not a subject of Dr. Milyo's research." *Id*. That isn't the case here. As reflected by his report and resume, Dr. Milyo over the course of his career has specialized in campaign finance and money in politics more generally. Thus, in contrast to *Many Cultures, One Message*, Dr. Milyo's testimony would be relevant to whether New Mexico laws affect quid-pro-quo corruption, or the appearance thereof.

Similarly, important to the District of Washington Court's *Daubert* evaluation was a lack of commonality between Dr. Milyo's research on other states' registration, itemization, and expenditure reporting requirements versus the Washington grassroots lobbying laws at issue. *Id.* ("Dr. Milyo utterly fails to show that the laws in the other states he researched are the same as the disclosure laws at issue here, let alone that they have been implemented and enforced in the same way . . ."). However, the link here is not nearly as attenuated. Dr. Milyo has evidenced direct research on the effects of campaign contribution limit laws, which are sufficiently comparable to New Mexico's laws.

The last relevant factors were that Dr. Milyo had prepared his research in a "strategic nature" and had also encroached on the province of the District of Washington Court by concluding Washington's laws were vague and overbroad, thus chilling protected First Amendment speech. *Id.* at 1143. In contrast to the tailored research and analysis Dr. Milyo did in *Many Cultures, One*

9

*Message*, he did not conduct thirty plus years of research on the relevant topic to specifically assist this litigation. Nor have Defendants argued that Dr. Milyo's testimony would encroach on the province of the Court by reaching any legal conclusions.

For these reasons, the Court finds that *Many Cultures, One Message* is distinguishable from the legal and factual issues in the case at bar and thus, is not persuasive precedent for excluding the expert opinions of Dr. Milyo.

### iii.  The underlying citations are relevant to Dr. Milyo's opinions.[5]

Defendants argue that several articles cited in the Milyo Report are too dissimilar from the factual inquiry at hand. For example, Dr. Milyo's 2016 article measures corruption convictions across states, and his 2006 article deals with general public attitudes toward government. Similarly, Defendants further contend that Dr. Milyo's testimony on public opinion surveys consists of his opinions regarding general trust in government, rather than the specific inquiry regarding the appearance of corruption. These dissimilarities, Defendants suggest, reflect the overall insufficiency of Dr. Milyo's underlying data.

The Court disagrees. Whether New Mexico laws affect "quid-pro-quo corruption, or the appearance thereof" is a multi-faceted question. Answering this question will require the factfinder to consider wide-ranging information, and the articles to which Defendants point do not fall outside of this permissible range. Specifically, inquiring into the "appearance of corruption" requires the parties to consider the process by which people form opinions, which encompasses general public attitudes toward, and general trust in, government. Surely, the level of specificity and relevance

---

[5] This discussion echoes the Court's relevance analysis in Section I. However, in contrast to whether Dr. Milyo's opinions are relevant to the overall factual inquiry, this Section deals with whether his underlying citations are sufficiently relevant to his opinions to constitute a reliable methodology.

will differ from article to article, but overall a political economist would likely reasonably rely on this information to form such an opinion, as Dr. Milyo did here. *See* Fed. R. Evid. 703.

Considering Dr. Milyo's three decades of relevant experience and his numerous relevant citations, the Court finds that Dr. Milyo's opinions are based on sufficient facts or data. *See* Fed. R. Evid. 702(b).

B. **Dr. Milyo's testimony is the product of a reliable methodology.**

Expert testimony must be the product of reliable principles and methods. Fed. R. Evid. 702(c). In addition to his thirty plus years of experience in the field, Dr. Milyo relies on numerous studies—much of his own scholarship—analyzing similar laws in other states. From his extensive experience and research, Dr. Milyo deduces that the laws at issue in this case will not reduce corruption or the appearance thereof. In relevant part, his report provides:

> [M]ost of the scholarly attention to state campaign finance laws focuses on contribution limits to candidates from individuals or non-party organizations, independent expenditures, and public financing . . . the hypothesis that limits on contributions to and from political parties has any causal impact on quid pro quo corruption or the appearance of corruption is strictly speaking, untested . . . Nevertheless, based on the consistent and repeated findings of the existing research, it is my opinion that New Mexico's limits on contributions to and from political parties do not substantively reduce either quid pro quo corruption . . . or the appearance of corruption perceived by residents.

Milyo Report, Doc. 226, Ex. 31, at 11. Defendants argue that the combination of Dr. Milyo's experience and unexplained selection of articles does not constitute a reliable methodology. His testimony, thus, is not based on "scientific knowledge, which 'implies a grounding in the methods and procedures of science' based on actual knowledge, not 'subjective belief or unsupported speculation.'" *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1222 (10th Cir. 2003) (quoting *Daubert*, 509 U.S. at 590).[6]

---

[6] Throughout their briefing, Defendants repeatedly refer to Dr. Milyo's testimony as "unscientific" in an effort to demonstrate its unreliability. The Supreme Court, however, has held: "We conclude that *Daubert's* general holding—

11

The Court finds that Dr. Milyo's methodology is reliable. Contrary to Defendants' admonition, the Court notes Dr. Milyo's three decades of experience specializing in money in American politics is highly suggestive of his reliability. *See Kumho Tire Co.*, 526 U.S. at 150 ("[T]he relevant reliability concerns may focus upon personal knowledge or experience."). Furthermore, to arrive at such conclusions, experts tend to employ similar deductive reasoning, which is expressly permitted by the Tenth Circuit. *See Bitler v. A.O. Smith Corp.*, 391 F.3d 1114 (10th Cir. 2004) (finding "scientifically valid" methodology when fire investigator used his personal experience, training, method of observation, and deductive reasoning to reach opinion), *order clarified on other grounds on reh'g*, 400 F.3d 1227 (10th Cir. 2005); *Daubert*, 509 U.S. at 592 ("[A]n expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation.").

In sum, the combination of Dr. Milyo's extensive experience, relevant academic expertise and research, and deductive reasoning constitutes a reliable methodology.

C. **The proposed testimony reliably applies the methodology to the facts of the case.**

Finally, the expert must reliably apply the principles and methods to the facts at hand. *See* Fed. R. Evid. 702(d). Citing *Many Cultures, One Message*, Defendants argue that the studies and articles on which Dr. Milyo relies are not specific to New Mexico, the types of laws challenged in this case, or the corruption or appearance of corruption assessed by the Court. 830 F. Supp. 2d 1111, 1141–42 (W.D. Wash. 2021). As squarely addressed above in Section II.A, the Court finds that omission of this one type of data is not detrimental to Dr. Milyo's opinions. Instead, Dr. Milyo's extensive experience and research form a sufficient basis from which he deductively

---

setting forth the trial judge's general 'gatekeeping' obligation—applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical and 'other specialized' knowledge." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999).

reasons to the facts at bar. Therefore, the Court concludes that Dr. Milyo has reliably applied his methodology to the facts of this case.

In sum, because Plaintiffs have satisfied Rule 702 elements (b)–(d), the Court finds that Dr. Milyo's proposed testimony is sufficiently reliable. *See* Fed. R. Evid. 702(b)–(d).

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants' Motion to Exclude Expert Testimony, Doc. 223, is **DENIED** for the reasons discussed in this Memorandum Opinion and Order.

_____
WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE