IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

REPUBLICAN PARTY OF NEW MEXICO, *et al.*,

        Plaintiffs,

vs.                                                    No. 11-cv-900-WJ-KBM

HECTOR BALDERAS, in his official capacity, New Mexico Attorney General; MAGGIE TOULOUSE OLVER, in her official capacity, New Mexico Secretary of State; and District Attorneys RAUL TORREZ, GERALD BYERS, and DIANNA LUCE, in their official capacities,

        Defendants.

**MEMORANDUM OPINION AND ORDER
DENYING IN PART AND GRANTING IN PART
CROSS-MOTIONS FOR SUMMARY JUDGMENT**

**THIS MATTER** comes before the Court following the parties' Cross-Motions for Summary Judgment. *See* Docs. 238 & 242. Now eleven-years-old, this lawsuit challenges the constitutionality of New Mexico's campaign finance laws as codified in the Campaign Reporting Act ("Campaign Reporting Act"), N.M. Stat. Ann. § 1-19-34.7 *et seq.*[1] Having carefully reviewed the pleadings and applicable law, the Court rules that (i) Plaintiffs have standing to assert all claims, and that (ii) summary judgment is not appropriate for either party on the basis that there are issues of fact that preclude the granting of any of the Cross-Motions for Summary Judgment and neither party is clearly entitled to judgment as a matter of law.

---

[1] The Campaign Reporting Act sets by law various political contribution limits and disclosure requirements and grants the New Mexico Secretary of State the authority to promulgate rules to implement the Act. *See* N.M. Stat. § 1-19-26.2; *see also* N.M.A.C. § 1.10.13.

1

## ANALYSIS

I. **Standing**

Ten years ago, the Court relying only on the Complaint found that Plaintiffs had standing to assert Counts I through V due to their justified fear of legal enforcement of the contribution-limit provisions. *Republican Party of N.M. v. King*, 850 F.Supp.2d 1206, 1211 (D.N.M. 2012). The parties have since conducted voluminous discovery, and Plaintiffs have added Counts VI through IX in the Third Amended Complaint. *See* Doc. 160. While Defendants do not contest standing on Count I, the Court must determine, first, whether any relevant discovery—including the parties' depositions, interrogatories, and declarations—impacts the prior finding of standing on Counts II through V. Second, the Court must ascertain whether Plaintiffs have standing on their newly added claims. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (plaintiffs have greater burden to establish standing at summary judgment than prior to discovery).

A. **Legal Standard**

Article III of the United States Constitution restricts the federal courts to the adjudication of "Cases" or "Controversies." U.S. Const. art. III, § 2. This principle requires Plaintiffs to establish "standing," which consists of three elements (as applied to each claim): (1) an injury-in-fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citations omitted). Defendants are New Mexico officials who have the authority to enforce the Campaign Reporting Act. Declaratory and injunctive relief would redress Plaintiffs' alleged harm by allowing them to contribute beyond the Campaign Reporting Act's limits, circulate certain ads without fear of triggering the "independent expenditure" definition, and use unlimited funds to finance "independent election activities." Defendants thus do not dispute the second and third

elements, and so the analysis below turns on whether Plaintiffs have alleged sufficient injuries in fact for each count asserted.

In the First Amendment context, however, Plaintiffs "need not 'expose [themselves] to actual arrest or prosecution to be entitled to challenge a statute that [they] claim[ ] deters . . . [their] constitutional rights." *Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1087–88 (10th Cir. 2006) (citation omitted). Therefore, in evaluating the injury in fact for each claim, the Court's essential inquiry is whether Plaintiffs maintain an "objectively justified fear of real consequences" that produces a "chilling effect on [the Plaintiffs'] First Amendment rights." *Id.* at 1088 (citations and quotations omitted). One way in which Plaintiffs may satisfy this standard is by demonstrating: (1) past engagement in the speech at issue; (2) a present desire to engage in such speech; and (3) a plausible claim that they have no intention to do so because of a credible threat of enforcement. *Id.* at 1089. Though evidence of "past engagement" is not always required, it lends concreteness and specificity to a claim. *Id.* The Court now applies this standard to Counts II through IX.

### B. Contributions from RNC to NM-GOP (Count II)

The Federal Election Campaign Act ("FECA") allows national political parties to transfer unlimited amounts of money to state political parties. 52 U.S.C. § 30116(a)(4); 11 C.F.R. § 102.6(a)(1)(ii). In Count II, Plaintiffs argue that N.M. Stat. §§ 1-19-34.7(A)(1), (C) & (E) of the Campaign Reporting Act contradict this FECA provision by prohibiting the Republican Party of New Mexico ("NM-GOP") from soliciting or accepting contributions from a national political party (specifically, the Republican National Committee ("RNC")) in amounts greater than $26,000. Thus, according to Plaintiffs, this prohibition violates the Supremacy Clause of the U.S. Constitution.

Under the "law of the case" doctrine, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *United States v. Monsisvais*, 946 F.2d 114, 115 (10th Cir. 1991) (quotation omitted); *Kennedy v. Lubar*, 273 F.3d 1293, 1298–99 (10th Cir. 2001) ("'Law of the case rules have developed to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit' . . . [I]t is not uncommon for [an] 'appellate court . . . [to] adhere [ ] to prior rulings as the law of the case, at times despite substantial reservations as to the correctness of the ruling.'") (quotation omitted).

In granting the preliminary injunction, the Court concluded that Plaintiffs have Article III standing to assert Count II due to their objectively justified fear of prosecution. *Republican Party of New Mexico v. King*, 850 F.Supp.2d 1206, 1211 (D.N.M. 2012) (Doc. 38), *aff'd* 741 F.3d 1089 (10th Cir. 2013) (Doc. 57-1). Defendants appealed the granting of the preliminary injunction but did not argue on appeal that the standing decision was error. The Tenth Circuit affirmed this Court's Memorandum Opinion and Order granting the preliminary injunction. Doc. 57-1. Based on the Tenth Circuit's affirmance, a few years thereafter, Defendants during a status conference on December 2, 2016, went as far to agree that the Court should enter Judgment on this claim, an agreement necessarily implicating Plaintiffs' standing to assert Count II. *See* Doc. 79; *Dobbs v. Anthem Blue Cross & Blue Shield*, 600 F.3d 1275, 1279–80 (10th Cir. 2010) (issue was necessarily decided by implication during prior appeal). Yet, Defendants now take a contrary stance, arguing that the RNC has never testified that it would have contributed to NM-GOP but for the limitations, and that Plaintiffs thus have not suffered a concrete injury. Defendants, however, have presented no intervening authority, new and different evidence, or clear error that would persuade the Court to alter its prior ruling. *Rimbert v. Eli Lilly Co.*, 647 F.3d 1247, 1251 (10th Cir. 2011). Therefore,

4

pursuant to the "law of the case" doctrine, the Court concludes that its prior finding still governs, and Plaintiffs therefore have standing to assert Count II.

### C. Contributions from NM-GOP to Local Parties (Count III) and Candidates (Counts IV & V)

NM-GOP's contribution history reflects a concrete and specific intent to contribute beyond the Campaign Reporting Act's limits to candidates (Counts IV and V) as well as to local parties (Count III). NM-GOP contributed $4,324.46 in 2012 to the Republican Party of Bernalillo County and amounts varying from $500 to $1,000 ever since, including the 2020 election cycle. *See* Doc. 246-9. As for its candidate contributions, NM-GOP prior to the Campaign Reporting Act's enactment contributed amounts greater than $5,000 (Doc. 117-3 at 3–6) and maxed out in 2016 by contributing $5,400 to "Keep Justice Nakamura."[2] Doc. 246-8 at 5–7. Combined with its important role in New Mexico politics, NM-GOP's history demonstrates a past engagement in protected speech, a present desire to engage in such speech, and a plausible claim that they cannot do so in fear of prosecution. *See Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1089 (10th Cir. 2006).

Defendants' contrary arguments are unpersuasive. Defendants assert that Plaintiffs have not consistently maxed out their contributions in recent history, nor have they specified who they will contribute to in the future. According to Defendants, this warrants the conclusion that Plaintiffs' intent to contribute beyond the limits is insufficiently concrete. This argument, however, fails to properly account for the nature of elections. Not all races are hotly contested or require high levels of funding, and many candidates do not announce their candidacy until closer to the applicable election day. Precisely the candidates and local party organizations requiring funding

---

[2] For context, "Keep Justice Nakamura" was a campaign slogan recommending voters to retain now-retired State Supreme Court Justice Judith Nakamura.

and then how much funding they should receive are highly variable strategic decisions that frequently are not made far in advance of election day. Doc. 123-7 at 3.

In other words, it's not realistic to expect NM-GOP to contribute the maximum allowable amount to specific local parties and candidates well ahead of every election.[3] *See McCutcheon v. FEC*, 572 U.S. 185, 194–95 (not questioning plaintiff's standing when he averred an intent to contribute beyond FECA's limits, despite only having contributed half the allowable amount); *Tandy v. City of Wichita*, 380 F.3d 1277, 1284 (10th Cir. 2004) (finding plaintiff averred sufficient intent to use bus by her past use and continuing need); *FEC v. Wisconsin Right to Life, Inc.*, 551 U.S. 449, 462 (2007) (finding standing when reasonable expectation that same controversy would arise in the future—when plaintiff had no way of predicting what future issues would lead it to run particular ads).[4]

In sum, Plaintiffs have offered more than a "subjective chill," *Laird v. Tatum*, 408 U.S. 1, 13–14 (1972); more than a "bare assertion that, as a result of government action, [they are] discouraged from speaking . . ." *Walker*, 450 F.3d at 1089; and more than an abstract interest in the Campaign Reporting Act's constitutional validity. In fact, NM-GOP is one of the entities most affected by the Campaign Reporting Act's contribution limits because of its role as a major political party in New Mexico. For these reasons, the Court stands by its original decision finding that Plaintiffs have alleged an "objectively justified fear of real consequences" for violating the

---

[3] Because of the Campaign Reporting Act's contribution limits, NM-GOP provided non-monetary support to specific candidates in the 2020 general election cycle; a representative stated: "it would have been great to be able to give more to the candidates. However, we felt that being able to help in this manner was more beneficial because of the limits." Doc. 246-4 at 3–5.

[4] For support, Defendants make two arguments. First, NM-GOP did not make any monetary contributions to candidates in the 2020 election cycle and, second, Ryan Cangioloso (former NM-GOP chair) testified in April 2018 that "the resources [NM-GOP] ha[s] and the needs we have right now don't allow for there to be an allocation to specific candidates." Doc. 122-18 at 3. While these points certainly cut against NM-GOP's declaration that it is ready, willing, and able to donate beyond the Campaign Reporting Act's limits, they nevertheless comport with the Court's rationale above: that each election entails distinct and variable funding considerations.

Campaign Reporting Act's limits to candidates and local parties. Therefore, the Court concludes that Plaintiffs have standing to assert Counts III through V. *Crawford v. Marion County Election Bd.*, 553 U.S. 181, 189 n.7 (2008) (where one petitioner had standing, "there is no need to decide whether the other petitioners also have standing.").

### D. "Independent Expenditure" Definition Challenge (Counts VI, VII, and VIII)

Plaintiffs Right to Life Committee of New Mexico ("RTLCNM") and Harvey Yates offer two proposed ads to challenge the constitutionality of the "independent expenditure" definition in the Campaign Reporting Act. *See* N.M. Stat. § 1-19-26(N).[5] First, RTLCNM's ad expresses gratitude toward and includes the contact information for various New Mexico Senators that furthered the anti-abortion movement. Doc. 149-10. Second, Plaintiff Yates' ad explains retiring Representative Brian Egolf's participation in the purported travesty of New Mexico's campaign finance law, inviting readers to contact Yates with their disagreements. Doc. 149-11. Both omit express language advocating the election or defeat of the mentioned politicians, and Plaintiffs intended to circulate them within thirty days before a primary election or sixty days before a general election.

---

[5] N.M. Stat. § 1-19-26(N) defines an "independent expenditure" as an expenditure that is:

(1) made by a person other than a candidate or campaign committee;

(2) not a coordinated expenditure as defined in the Campaign Reporting Act; and

(3) made to pay for an advertisement that:

a. expressly advocates the election or defeat of a clearly identified candidate or the passage or defeat of a clearly identified ballot question [Count VIII];

b. is susceptible to no other reasonable interpretation than as an appeal to vote for or against a clearly identified candidate or ballot question [Count VI]; or

c. refers to a clearly identified candidate or ballot question and is published and disseminated to the relevant electorate in New Mexico within thirty days before the primary election or sixty days before the general election at which the candidate or ballot question is on the ballot [Count VII].

Qualifying under the "independent expenditure" definition triggers costly registration and disclosure requirements, and noncompliance with these requirements can result in a fine up to $1,000 and/or one year of imprisonment. *See* N.M. Stat. § 1-19-36(A). Given these stakes, Plaintiffs argue that three independent components of this definition—"appeal to vote" (Count VI), "electioneering communication" (Count VII), and "expressly advocates" (Count VIII)—are overbroad and vague. Plaintiffs' fear of triggering these provisions prevents them from circulating certain ads and chills them from engaging in materially similar future activity. Therefore, Plaintiffs argue the provisions violate the First Amendment.

Again, Plaintiffs have established an objectively justified fear of prosecution. While the Campaign Reporting Act's independent expenditure definition is similar to the one set forth by the Supreme Court,[6] it is sufficiently distinct such that Plaintiffs have a colorable argument that the disputed components are unconstitutionally vague and overbroad. Plaintiff Yates' ad is couched in terms of opinion, invites readers to disagree, and does not mention "voting," "defeating," "rejecting," or similar language. Likewise, Plaintiff RTLCNM's ad is couched in terms of thanking senators on both sides of the political aisle and, like Plaintiff Yates' ad, does not use election-specific language. Nevertheless, Defendants could subjectively interpret both as "advocating the election . . . or defeat of . . . candidates," being "an appeal to vote for or against a candidate," and constituting a "reference to a candidate." N.M. Stat. § 1-19-26(N)(3)(a)–(c).

Defendants disagree for four primary reasons. At the outset, Defendants first argue that the Court should not consider Plaintiffs' detailed explanation of how their purported ads trigger these provisions because Plaintiffs' explanation appears for the first time in their reply brief. However, Defendants are not being denied the opportunity to respond to Plaintiffs' argument. Because the

---

[6] The Supreme Court broadly defines an independent expenditure as "political speech presented to the electorate that is not coordinated with a candidate." *Citizens United*, 558 U.S. 310, 360 (20210).

parties filed cross-motions and Defendants received the opportunity to respond to these arguments in their subsequent reply brief, the Court can properly consider all arguments set forth by Plaintiffs.

Second, Defendants contend that Plaintiffs offer insufficient evidence to establish what, if any, ads Plaintiffs Yates or RTLCNM wish to send in the future. Plaintiff Yates' ad concerns a retiring legislator, and a "bare assertion" that he wishes to engage in materially similar activity cannot establish that the same controversy involving application of the challenged definitional components will arise again. According to Defendants, this constitutes "too uncertain action" under Tenth Circuit case law, and the Court lacks sufficient information to properly conduct a balancing test. *See Rio Grande Foundation v. City of Santa Fe, N.M.*, 7 F.4th 956, 961 n.2 (10th Cir. 2021). The Court disagrees.

The ads offered by Plaintiffs Yates and RTLCNM are very similar to ads that were at issue in *FEC v. Wisconsin Right to Life, Inc.*, 551 U.S. 449, 462 (2007). In that case, the plaintiff sought to broadcast certain ads during a blackout period (thirty days before a Wisconsin primary election), during which one could not broadcast "electioneering" communications. *Id.* at 458–60. The ads encouraged Wisconsin voters to call and urge their U.S. Senators to oppose a filibuster delay tactic to impede the confirmation of various judicial nominees. *Id.* Because of their content, the ads at issue in *Wisconsin Right to Life* had the potential to be classified as illegal "electioneering communications" under Federal Election Commission regulations, but the conclusion of the relevant election had rendered them obsolete. *Id.* The Supreme Court nevertheless found standing because there was a reasonable expectation that a similar controversy would arise going forward and because the plaintiff had no way of predicting what other issues would prompt it to broadcast ads in the future. *Id.* at 462–63. For similar reasons, this Court concludes that Plaintiffs Yates and

RTLCNM have shown a reasonable probability that they would face a materially similar controversy in the future.

Third, Defendants argue that both ads fall squarely within the "electioneering" provision of the "independent expenditure" definition because they refer to a clearly identified candidate and the ads would be published and disseminated within thirty days before a primary election, or sixty days before a general election.[7] Defendants thus assert that the ads' "independent expenditure" status does not turn on the challenged provisions of "express advocacy" or "appeals to vote." However, just because Plaintiffs' ads clearly classify as "electioneering" communications does not mean that they cannot also classify as "express advocacy" or "appeals to vote." Defendants could reasonably interpret all three challenged provisions of the "independent expenditure" definition to subject Plaintiffs' ads to the disclosure requirements.

Lastly, Defendants argue that Plaintiff RTLCNM's past and future ads do not support standing because they are sent by email at very little cost—well under the $1,000 minimum to trigger the disclosure requirements. *See* N.M. Stat. §1-19-27.3. Even assuming Plaintiff RTLCNM cannot trigger this minimum threshold, that would not undermine Plaintiff Yates' separate standing to also challenge the definitions. In other words, where one plaintiff has standing, "there is no need to decide whether the other [plaintiffs] also have standing" on a certain count. *Crawford v. Marion County Election Bd.*, 553 U.S. 181, 189 n.7 (2008).

### E. Limits on Independent Election Activity (Count IX)

---

[7] Within the "independent expenditure" definition, an "electioneering" communication "refers to a clearly identified candidate or ballot question and is published and disseminated to the relevant electorate in New Mexico within thirty days before the primary election or sixty days before the general election at which the candidate or ballot question is on the ballot." N.M. Stat. § 1-19-26(N)(3)(c).

In Count IX, Plaintiffs NM-GOP and New Mexico Turn Around ("NMTA") argue that N.M. Stat. § 1-19-34.7(I)[8] unconstitutionally subjects contributions earmarked for "independent election activities" and "administrative or overhead expenses associated with" independent expenditures to the limitations set forth in N.M. Stat. § 1-19-34.7(A)(1), (C) & (E). Ultimately, Plaintiffs wish to accept unlimited contributions for the purpose of financing the above-mentioned activities and expenses, but cannot do so based on the wording in the Campaign Reporting Act.

Plaintiffs have met their burden to establish standing. Importantly, both NM-GOP and NMTA have independent expenditure bank accounts[9] and testify that they seek to use such funds for "independent election activities" and "administrative or overhead expenses." Specifically, NM-GOP has administrative and overhead expenses related to these activities, and NMTA has expressed an interest in sponsoring get-out-the-vote and voter registration events. However, the Campaign Reporting Act—unlike its federal counterpart—does not expressly allow political committees to pay for such expenses with an independent expenditure account capable of receiving unlimited funds. Rather than dispute this fact, Defendants argue that New Mexico has the authority to regulate in this manner. It follows that Plaintiffs have a colorable argument that they must resort to their contribution account funds, thereby warranting an objectively justified fear of prosecution for using their funds in the manner they seek.

Defendants counter with several unavailing arguments. First, NM-GOP only *recently* created this independent expenditure account, and thus it cannot establish standing at the time it filed the Third Amended Complaint. A NM-GOP representative, however, previously testified that

---

[8] It reads: "The limitations on contributions to political committees provided for in Subsection A of this section shall not apply to a political committee that makes only independent expenditures or to a contribution to a political committee that is deposited in a segregated bank account that may only be used to make independent expenditures." N.M. Stat. Ann. § 1-19-34.7(I).

[9] A "contribution account" is an account that is used to contribute directly to a political candidate running for office. Because independent expenditures are not coordinated with political candidates, accounts holding independent expenditures are often referred to as "non-contribution accounts."

11

it was in the process of opening such an account, and the Court deems that testimony sufficient to support standing given NM-GOP's role in New Mexico politics. Moreover, Defendants assert that NM-GOP does not currently solicit such funds, nor does its current structure allow it to approve expenditures without the direct involvement of someone also working with candidates. These arguments advanced by Defendants do not overcome NM-GOP's concrete intent to change its practices in order to use its independent expenditure account to pay for these expenses.

Defendants also argue that NMTA lacks a concrete intent to engage in so-called independent election activities because it has not previously done so. A plausible explanation for this so-called lack of a concrete intent is that the disputed provisions of the Campaign Reporting Act challenged in Count IX restrict NMTA from engaging in these activities in the first place. That's why Plaintiffs assert this claim. And as the Tenth Circuit has acknowledged, a history of engagement in the disputed conduct is not *always* a requirement to establish a concrete intent, though it does lend concreteness and specificity to the claim. *Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1089 (10th Cir. 2006). Additionally, Defendants argue that NMTA has only *minimal* expenses for both its contribution and independent expenditure accounts, and that it cannot establish a fear of prosecution because it already pays for its administrative expenses from its independent expenditure account. Assuming the truth of these assertions, this is insufficient to overcome NMTA's concrete desire to engage in *independent election activities*, which the Campaign Reporting Act plausibly regulates.

Lastly, Defendants argue that the Campaign Reporting Act's contribution limits may not apply to "independent election activities" because those activities are not "for the purpose of supporting or opposing a ballot question or the nomination of a candidate." N.M. Stat. Ann. § 1-19-26(H)(1). At the same time, however, Defendants argue throughout the pleadings that New

Mexico *may* regulate such activities under its broader authority to limit political committee contributions earmarked for independent expenditures. The Court agrees that whether the Campaign Report Act limits such activities is not readily apparent, but Plaintiffs do not forfeit standing for this initial uncertainty. Such arguments are better reserved for decision on the merits.

## II.     Merits

Genuine issues of material fact preclude granting to either party summary judgment on the merits of the pending claims. As a non-exhaustive list, the following disputes cannot be resolved as a matter of law: whether Defendants' citations establish a conjectural history of actual or apparent *quid pro quo* corruption in New Mexico, whether New Mexico passed the Campaign Reporting Act for the impermissible purpose of "leveling the playing field," and whether there exists a sufficient risk of corruption between NM-GOP and county parties and candidates.

Further, the parties do not appear to agree on the type of constitutional challenge being made in this case.  Plaintiffs ask the Court to declare the Act's limits unconstitutional "as applied." (Doc. 236 at 9).  Defendants instruct the Court on the law regarding "facial challenges."  (Doc. 242 at 51).  A plaintiff may challenge the constitutionality of a statute on an as applied basis, on a facial basis, or both.  Because the legal analysis differs depending on the nature of the challenge, and the Court should not reach the question of facial validity unless necessary, the Court cannot resolve the claims in this case as a matter of law without further clarification from the parties.  *See United States v. Supreme Ct. of New Mexico*, 839 F.3d 888, 907–08 (10th Cir. 2016) (explaining difference between "as applied" and "facial" challenges).

The Court denies summary judgment on the merits because of the existence of genuine issues of material fact and because the Court cannot decide the case as a matter of law as presently postured.  Because the disputed issues cannot be resolved as a matter of law, the Court determines

13

it necessary for this matter to proceed to a bench trial. Pursuant to Fed. R. Civ. P. 39(b), the Court gives notice that it intends to conduct a trial of the merits on the written record in this case. The Court proposes the following trial procedures:

(1) within 30 days after entry of the Court's pretrial order, the parties may submit any additional written or documentary evidence the parties want the Court to consider;

(2) within 14 days after the deadline for submission of additional evidence, the parties may file written objections to any additional evidence submitted by another party;

(3) 30 days after the deadline for objections to additional evidence, the parties shall simultaneously submit written closing arguments and Fed. R. Civ. P. 52 requested findings and conclusions; and

(4) based on the written record, the parties' written closing arguments, and the requested findings and conclusions, the Court will then enter its Fed. R. Civ. P. 52 findings, conclusions, and judgment in this matter.

If any party objects to the Court's proposal for a bench trial on the written record or the procedures set out above, the party may file objections within 30 days of entry of this Memorandum Opinion and Order. The Court will then set a hearing to consider any objections and to consider any suggestions by the parties on how the bench trial in this case should proceed.

## CONCLUSION

For the reasons stated in Section I, **IT IS ORDERED** that Defendants' Cross Motion for Summary Judgment (Doc. 242) is hereby **DENIED IN PART**, and Plaintiffs have standing to assert all nine Counts.

For the reasons stated in Section II, **IT IS FURTHER ORDERED** that the Cross Motions for Summary Judgment (Docs. 238 & 242) are both **DENIED IN PART**, and all nine Counts shall proceed to a bench trial based on the existing written record. For this reason, it is **FURTHER ORDERED** that within 30 days after entry of this Memorandum Opinion and Order, the parties may file any written objections to the Court's proposal to conduct a trial of the merits on the written record in this case and they may offer suggestions on how the bench trial in this case should proceed.

_____
WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE