## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**REPUBLICAN PARTY OF NEW MEXICO,**
***et al.*,**

      **Plaintiffs,**

**v.**                                                      **Case No: 1:11-cv-900-WJ-KBM**

**RAÚL TORREZ, in his official**
**capacity, New Mexico Attorney General;**
**MAGGIE TOULOUSE OLIVER, in her**
**official capacity, New Mexico Secretary of**
**State; and District Attorneys**
**SAM BREGMAN, GERALD BYERS, and**
**DIANNA LUCE, in their official capacities,**

      **Defendants.**

### DEFENDANTS' RESPONSE TO PLAINTIFFS' EVIDENTIARY OBJECTIONS TO EVIDENCE CITED IN DEFENDANTS' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

Defendants (collectively, "New Mexico"), in accordance with the Scheduling Order for Trial on the Written Record (ECF No. 273), file the following response to Plaintiffs' Objections to Evidence Cited in Defendants' Proposed Findings of Fact and Conclusions of Law (ECF No. 276) ("Plaintiffs' Objections"):

Plaintiffs' Objections separately treat eight items or categories of items to which they object. But the nature and basis of the objections to each of these eight items is identical: Plaintiffs claim hearsay and irrelevance, often repeating the same arguments as support for their objections. New Mexico, thus, organizes its response by addressing the

*Republican Party of N.M. v. Torrez*, Case No. 1:11-cv-900-WJ-KBM
Defs' Resp. to Pls' Objs. to Evidence Cited in Defs' Proposed Findings of Fact & Concls. of Law
Page **1** of **24**

common bases of Plaintiffs' hearsay and relevance objections–and why those objections fail–followed by specific discussion of individual items as appropriate.

## I.      The items objected to do not meet the definition of hearsay, and therefore, require no hearsay exception.

### A.    Statements are not hearsay at all unless offered for their truth.

The documents with which Plaintiffs take issue are not hearsay because they are not statements exclusively offered for the truth of their assertions. Out-of-court statements are, by definition, not hearsay unless they are offered "to prove the truth of the matter asserted." Fed. R. Evid. 801(c)(2); *see also, e.g., United States v. Ibarra-Diaz*, 805 F.3d 908, 922 (10th Cir. 2015); *United States v. Brinson*, 772 F.3d 1314, 1322 (10th Cir. 2014). Consequently, "a document that is hearsay when offered to prove its truth will not be excluded under the hearsay rule if offered for some other purpose." *United States v. Cestnik*, 36 F.3d 904, 908 (10th Cir. 1994) ("[A] document need not meet the requirements of Rule 803(b)—or any other exception to the hearsay rule—if it is nonhearsay. A document can be hearsay only when it is offered to prove the truth of the matter asserted."). An effect on a hearer is one– and only one–such non-hearsay purpose.

Other purposes allow the admission of New Mexico's disputed evidence as non-hearsay. Specifically, evidence that allegations of corruption exist in the public discourse is not evidence offered to prove that the acts of corruption necessarily occurred as described. Instead, it shows (1) what the public perceived to have possibly occurred and (2) that there exist public allegations that can create or confirm an appearance of corruption. Such evidence, which is probative of an appearance of quid-pro-quo corruption, is not hearsay

*Republican Party of N.M. v. Torrez*, Case No. 1:11-cv-900-WJ-KBM
Defs' Resp. to Pls' Objs. to Evidence Cited in Defs' Proposed Findings of Fact & Concls. of Law
Page 2 of 24

at all because it has significance to the case wholly apart from whether the underlying corruption allegations are true.  *See, e.g., Democratic Party of the U.S. v. Nat'l Conservative Pol. Action Comm.*, 578 F. Supp. 797, 829 (E.D. Pa. 1983) ("*NC PAC*"), *rev'd in part sub nom. on other grounds, FEC v. Nat'l Conservative Pol. Action Comm.*, 470 U.S. 480 (1985) ("The hearsay evidence rule does not bar … the admissibility of these and other authenticated news reports when used to show public perceptions of corruption, rather than corruption in fact."). Stated differently, because the evidence at issue supports New Mexico's interest in the challenged laws *regardless of whether or not the allegations contained in the evidence are true*, the evidence is being offered for purposes other than the truth of any statements it contains. And it is not hearsay.

Plaintiffs acknowledge that evidence not offered for the truth of the matter asserted is non-hearsay, but argue that for New Mexico's evidence to meet this standard, the State must first show "an actual *effect* on an actual *listener*." Pls' Objs., ECF No. 276 at 3-4. But they cite no authority for this proposition. Instead, the objections offer only a Seventh Circuit case that evaluated a particular use of an out-of-court statement for which the prosecution claimed its purpose was to show an effect on a particular law enforcement officer (but which, at trial, "the government did not actually use … in that way"). *United States v. Graham*, 47 F.4th 561, 567 (7th Cir. 2022). Relying on that case, Plaintiffs then argue that New Mexico's evidence must be excluded because "New Mexico has offered no evidence that the articles were read at all, much less widely enough to create a general public perception of corruption, … [or evidence] concerning whether the public believed

*Republican Party of N.M. v. Torrez*, Case No. 1:11-cv-900-WJ-KBM
Defs' Resp. to Pls' Objs. to Evidence Cited in Defs' Proposed Findings of Fact & Concls. of Law
Page 3 of 24

the articles." Pls' Objs., ECF No. 276 at 5. Again, the *fact* of the articles and reports alone (often, in major publications with widespread circulation) shows the existence of public concern and discourse about corruption–meaning that the documents are admissible as non-hearsay regardless of how large their readership was or how they were subjectively received. *See United States v. DeLeon*, 418 F. Supp. 3d. 682, 801 (D.N.M. 2019) ("That the paperwork was sent is an action and not a statement, and is thus admissible non-hearsay."). At most, arguments that a particular article was not widely read go only to the weight of that evidence in supporting an appearance of corruption in New Mexico.

Again, the subjective effect on a particularly identified hearer is not the only non-hearsay purpose for which evidence may be admitted. For example, out-of-court statements were permissible non-hearsay subjects for testimony when offered to show a person's demonstrated animus or to help the trier evaluate the reasonableness of another's state of mind. *United States v. Ballou*, 59 F. Supp. 3d 1038, 1062 (D.N.M. 2014). This is in keeping with the rule that "testimony is not hearsay when it is offered to prove only that a statement was made and not the truth of the statement." *Id.* at 1058. Similarly, National Crime Information Center reports were not hearsay when introduced to prove that arresting officers had developed reasonable suspicion, which is an objective analysis that does not inquire into the particular officers' subjective beliefs about the reports. *Cyeef-Din v. Onken*, 586 F. Supp. 3d 1139, 1146 n.2 (D.N.M. 2022) (discussing *Ramirez v. City of Wichita*, 78 F.3d 597 (10th Cir. 1996)).

*Republican Party of N.M. v. Torrez*, Case No. 1:11-cv-900-WJ-KBM
Defs' Resp. to Pls' Objs. to Evidence Cited in Defs' Proposed Findings of Fact & Concls. of Law
Page **4** of **24**

Not only does this conclusion follow from a plain reading of Rule 801, but it has also been reached by courts examining exactly this type of evidence in exactly this type of case. "[A]lthough newspaper articles do not create an *automatic* presumption of corruption, they may be considered, along with 'legislative facts,' in determining whether a reasonable person would believe that corruption or the potential for corruption exists." *Ognibene v. Parkes*, 599 F. Supp. 2d 434, 448 (S.D.N.Y. 2009). When "newspaper and magazine articles" cited in findings of fact "have not been offered for the truth of the matter asserted, but instead to demonstrate the appearance of corruption created by ... contributions," hearsay objections to them have been overruled. *Mariani v. United States*, 80 F. Supp. 2d 352, 362 (M.D. Pa. 1999). Therefore, allegations of corruption in news reports and other public sources are not inadmissible hearsay.

### B.   Unlike adjudicative facts, legislative facts are not subject to exclusion as hearsay.

Plaintiffs' hearsay objections also should be overruled because the evidence to which Plaintiffs object offers legislative, not adjudicative, facts to which the hearsay rule does not apply. In constitutional litigation, courts may consider "legislative facts" from articles, studies, and other publications to assess law and policy. While "[a]djudicative facts are simply the facts of the particular case," "[l]egislative facts ... are those which have relevance to legal reasoning and the lawmaking process, whether in the formulation of a legal principle or ruling by a judge or court or in the enactment of a legislative body." Fed. R. Evid. 201, comm. cmt. to subdiv. (a) (1972); *see also United States v. Iverson*, 818 F.3d 1015, 1030 (10th Cir. 2016) (discussing difference between legislative and adjudicative facts);

*Republican Party of N.M. v. Torrez*, Case No. 1:11-cv-900-WJ-KBM
Defs' Resp. to Pls' Objs. to Evidence Cited in Defs' Proposed Findings of Fact & Concls. of Law
Page **5** of **24**

*United States v. Wolny*, 133 F.3d 758, 764 (10th Cir. 1998) (defining legislative facts); *Jane L. v. Bangerter*, 794 F. Supp. 1537, 1540 n.3 (D. Utah 1992) (explaining that adjudicative facts are those "we ordinarily ask the jury to decide," such as "Who did what to whom, when, where and how? Was the light red? Was the defendant negligent?" and that "all other fact questions are non-adjudicative fact questions") (quoting Hon. Robert E. Keeton, *Legislative Facts & Similar Things: Deciding Disputed Premise Facts*, 23 Minn. L. Rev. 1, 14 (1988)).

Moreover, in applying constitutional scrutiny to legislation, courts can consider whether "there is a plausible policy reason" for the regulation and whether "the legislative facts on which the [regulation] is apparently based rationally may have been considered to be true by the governmental decisionmaker." *Armour v. City of Indianapolis*, 566 U.S. 673, 681 (2012) (applying rational basis review to non-suspect classification); *cf. Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 464 (1981) ("States are not required to convince the courts of the correctness of their legislative judgments. Rather, 'those challenging the legislative judgment must convince the court that the legislative facts on which the classification is apparently based could not reasonably be conceived to be true ....'"). Although the degree of scrutiny may vary by type of constitutional challenge, this strongly suggests that the types of information and the broad topics of public concern that informed–or even that plausibly *could* have informed–a legislature's decision (i) need not be individually proven at all to be considered in support of constitutionality and (ii) constitute legislative rather than adjudicative facts.

*Republican Party of N.M. v. Torrez*, Case No. 1:11-cv-900-WJ-KBM
Defs' Resp. to Pls' Objs. to Evidence Cited in Defs' Proposed Findings of Fact & Concls. of Law
Page **6** of **24**

Indeed, such sources are routinely cited and considered by courts, including the Supreme Court, in constitutional litigation and not excluded on hearsay grounds. In fact, legislative facts are arguably not evidence at all, but legal sources to be cited in briefing. Nonetheless, New Mexico included some documents reflecting legislative facts in its disclosure of additional evidence to avoid disputes over timely disclosure. *See, e.g.,* Pls.' Mot. Extend Discovery (ECF No. 109) (objecting to timing of production of various public records). And whether these materials are cited in support of New Mexico's proposed findings and conclusions as legislative facts, legal sources, or both is irrelevant to the Court's ability to properly consider them.

This Court has explained the ability to cite to materials probative of legislative facts and their liminal nature between fact and legal argument:

> To the extent that materials go towards elucidating the standard by which the Court should judge the facts of this case, rather than elucidating the facts themselves, the Court may look to, and the parties may cite to, evidence outside the record. ... There is always some vagueness inherent in the adjudicative-legislative divide, but it is nothing that appellate lawyers do not confront in virtually every case they brief. ... [M]aterials that contain legislative facts ... comprise, at base, legal argument—[] the parties may cite to them and talk about them to the extent that they believe it will persuade the Court.

*Jarita Mesa Livestock Grazing Ass'n v. U.S. Forest Serv.*, 305 F.R.D. 256, 298–99 (D.N.M. 2015). In a footnote, it went on to explain that an "interesting rule of thumb is that materials that are highly probative of legislative facts tend to be much more apt to be publicly available" and cited by URL or in a legal reporter than are adjudicative facts. *Id.* at 299 n.19. As an example, the Court referenced published medical studies regarding spousal consent

*Republican Party of N.M. v. Torrez*, Case No. 1:11-cv-900-WJ-KBM
Defs' Resp. to Pls' Objs. to Evidence Cited in Defs' Proposed Findings of Fact & Concls. of Law
Page 7 of 24

laws for abortions and domestic violence discussed by the Supreme Court in *Planned Parenthood v. Casey*. *Id.*

Legislative facts are properly considered in election law cases. After considering objections to "many of the FEC's facts" in an election law case on the grounds that "they improperly quote previous Supreme Court opinions" or "present inadmissible hearsay," the District Court for the District of Columbia overruled the plaintiff's objections. *Libertarian Nat'l Comm., Inc. v. FEC*, 930 F. Supp. 2d 154, 157 (D.D.C. 2013). It did so "for the reasons set forth by the FEC" that "the facts the [plaintiff] objects to are legislative facts, which are not subject to the Federal Rules of Evidence." *Id.* (quotation marks omitted). Such facts, the court observed, "are general facts which help the tribunal decide questions of law and policy, are without reference to specific parties, and need not be developed through evidentiary hearings." *Id.* (quotation marks and citations omitted); *see also Holmes v. FEC*, 823 F.3d 99, 126 (D.D.C. 2015), *rev'd in part on other grounds*, 823 F.3d 69 (D.C. Cir. 2016) (overruling admissibility objections as to legislative facts in election law case). Many of the sources to which Plaintiffs object contain legislative facts that the Court can consider in its legal analysis and that should not be excluded on hearsay grounds. For example, legislative records and factfinding, academic studies and surveys, and court filings may be considered in the Court's assessment of legislative facts.

Likewise, "newspaper articles, transcribed oral statements, letters/press releases, committee reports, websites, polls, and journal articles which principally document[ed] reports of voter fraud in jurisdictions other than Indiana" were admissible in a challenge to

*Republican Party of N.M. v. Torrez*, Case No. 1:11-cv-900-WJ-KBM
Defs' Resp. to Pls' Objs. to Evidence Cited in Defs' Proposed Findings of Fact & Concls. of Law
Page **8** of **24**

Indiana's voter identification law. *Ind. Democratic Party v. Rokita*, 458 F. Supp. 2d 775, 843–44 (S.D. Ind. 2006), *aff'd sub nom. Crawford v. Marion Cnty. Election Bd.*, 472 F.3d 949 (7th Cir. 2007), *aff'd*, 553 U.S. 181 (2008). The court accepted Indiana's argument that "the exhibits are admissible as 'legislative facts' which tend to 'support reasonable conclusions that (1) voter fraud exists; (2) the public is concerned about it; and (3) requiring photo identification at the polls would address these problems.'" *Id.* at 844. It then noted that the court "could almost take judicial notice" of some of these facts and that "Plaintiffs' attempt to exclude evidence of these patently obvious facts makes their motion to strike almost frivolous...." *Id.* at 845. So too here, where the Court may consider legislative facts concerning the purpose and history of New Mexico's campaign finance laws. Such evidence is not of adjudicative facts specific to the parties and subject to the Federal Rules of Evidence.

### C.   Plaintiff has identified no meaningful difference between the types of documents now objected to and those already admitted by agreement.

Plaintiffs had a full and fair opportunity to object to a trial on the written record, and instead consented to the same. But at the same time that the parties and Court are proceeding on this agreement, Plaintiffs object to the admission of evidence on, essentially, the grounds that it is not presented in a live-trial format. There is no meaningful difference, other than time of identification, between the documents to which Plaintiffs now object and to those which have already been deemed admitted under the agreed written-trial procedures. And the time of identification does not present any legitimate issue, as New

*Republican Party of N.M. v. Torrez*, Case No. 1:11-cv-900-WJ-KBM
Defs' Resp. to Pls' Objs. to Evidence Cited in Defs' Proposed Findings of Fact & Concls. of Law
Page 9 of 24

Mexico identified and disclosed these documents in a timely fashion, according to the Court's orders and the schedule to which Plaintiffs agreed.

### D. Each specific hearsay objection should be overruled.

In addition to the overarching reasons to overrule Plaintiffs' hearsay objections–including that the evidence is not offered for its truth and that the evidence presents legislative rather than adjudicative facts–Plaintiffs' hearsay objections to specific evidence should be overruled for the following additional reasons:

#### i. Richardson Articles.

As noted above, the Richardson Articles are not offered for the truth of the allegations against Governor Richardson and, as such, are non-hearsay. Plaintiffs' own objections reflect this: "All Richardson Articles are cited in support of the assertion that, 'at the time of the contribution limits' enactment,' press allegations against Richardson 'included reports of links between the award of state contracts and donations to campaigns and political party entities.'" Pls' Objs., ECF No. 276 at 4. This evidence of what was reported in the press at the time the challenged laws were enacted is non-hearsay.

Moreover, such evidence is regularly considered in constitutional litigation, particularly that challenging campaign finance laws. *See Ognibene,* 599 F. Supp. at 447–48; *Mariani,* 80 F. Supp. 2d at 362; *NC PAC,* 578 F. Supp. at 829. Indeed, it has been referenced by the Supreme Court in such cases. *Nixon v. Shrink Missouri Gov't PAC,* 528 U.S. 377, 393 (2000) (discussing "newspaper accounts of large contributions supporting inferences of impropriety" considered by the district court). Such evidence is generally considered

*Republican Party of N.M. v. Torrez,* Case No. 1:11-cv-900-WJ-KBM
Defs' Resp. to Pls' Objs. to Evidence Cited in Defs' Proposed Findings of Fact & Concls. of Law
Page **10** of **24**

because it is used to establish legislative facts. But the reports are also admitted as non-hearsay because they document the existence of allegations, not those allegations' truth. "[N]ews reports are ... used as evidence of ... the reports' likely effects on listeners and readers, in order to prove the appearance of corruption. They are not offered to prove the truth of the statements they contain, and they therefore are not hearsay." *Ball v. Madigan*, 245 F. Supp. 3d 1004, 1012 n.5 (N.D. Ill. 2017).

### ii. New Mexico Senate Book.

As with the Richardson Articles, the cited chapter of Dede Feldman's book is admissible as evidence of the existence of corruption *allegations* rather than those allegations' truth.

### iii. Martinez Articles.

The Martinez Articles are admissible for the same reasons as the Richardson Articles and New Mexico Senate Book discussed above. Plaintiffs' again make the unavailing argument that the articles' readership is unquantified. Their objections then reference a pull quote from Pay to Stay (reporting that racino "deal has convinced people that pay-to-play shenanigans in New Mexico have yet to run their course," *see* ECF No. 261-6) to argue that because this article reported on public perception it must necessarily and exclusively be offered for its truth. Again, the fact of the article's publication and discussion of both corruption and public sentiment are relevant, admissible non-hearsay regardless of whether it was true that the corrupt acts occurred *and* regardless of whether all "people" felt a particular way about them or not.

*Republican Party of N.M. v. Torrez*, Case No. 1:11-cv-900-WJ-KBM
Defs' Resp. to Pls' Objs. to Evidence Cited in Defs' Proposed Findings of Fact & Concls. of Law
Page **11** of **24**

### *iv. Corruption Survey.*

Public opinion surveys are classic examples of evidence of legislative facts noticed by courts in constitutional litigation. Plaintiffs offer no authority that individual survey respondents must be called as witnesses else the survey results be considered hearsay. To the contrary, public opinion polls are regularly admitted as non-hearsay, even where not used to establish legislative facts, because they measure the survey respondents' opinions or beliefs, not the truth of those opinions or beliefs. *Prudential Ins. Co. of Am. v. Gibraltar Fin. Corp. of Calif.*, 694 F.2d 1150, 1156 (9th Cir. 1982) ("Surveys are admissible, if relevant, either as nonhearsay or through a hearsay exception."); *Zippo Mfg. Co. v. Rogers Imports, Inc.*, 216 F. Supp. 670, 682 (S.D.N.Y. 1963) ("The weight of case authority, the consensus of legal writers, and reasoned policy considerations all indicate that the hearsay rule should not bar the admission of properly conducted public surveys. ... Some cases hold that surveys are not hearsay at all; other cases hold that surveys are hearsay but are admissible because they are within the recognized exception ... for statements of present state of mind, attitude, or belief."); Fed. Jud'l Ctr., *Manual for Complex Litig., Fourth*, § 11.493 (2004) ("Parties sometimes object that an opinion survey, although conducted according to generally accepted statistical methods, involves impermissible hearsay. When the purpose of a survey is to show what people believe—but not the truth of what they believe—the results are not hearsay.").

*Republican Party of N.M. v. Torrez*, Case No. 1:11-cv-900-WJ-KBM
Defs' Resp. to Pls' Objs. to Evidence Cited in Defs' Proposed Findings of Fact & Concls. of Law
Page **12** of **24**

### v. Common Cause & NM Watch Reports.

Reports and studies of public corruption, such as the Common Cause and New Mexico Ethics Watch reports, contain both legislative facts and non-hearsay evidence of the appearance of corruption in New Mexico. *See Jarita Mesa*, 305 F.R.D. at 290 (finding Nontimber Forest Report from the Forest Service to "contain[] legislative facts that do not touch specifically upon this case's facts").

Additionally, the Reports' documentation of campaign contributions' correlation with legislative votes constitutes a summary of admissible public records permitted under Federal Rule of Evidence 1006. Such summaries are permissible "to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court." Fed. R. Evid. 1006.

### vi. Wisconsin Articles.

The Wisconsin Articles are admissible both in the Court's determination of legislative facts about the use of county parties to circumvent campaign finance laws through county parties and as non-hearsay evidence establishing the existence of public allegations of such circumvention.

In addition, this evidence serves to rebut Plaintiffs' repeated contention that political parties are not plausible vehicles of corruption and that "contribution limits to and from political parties will have no effect on either the incidence of quid pro corruption in state government, or the appearance of corruption." *See, e.g.*, Pls' Requested Findings of Fact, ¶ 139.

*Republican Party of N.M. v. Torrez*, Case No. 1:11-cv-900-WJ-KBM
Defs' Resp. to Pls' Objs. to Evidence Cited in Defs' Proposed Findings of Fact & Concls. of Law
Page **13** of **24**

### vii. Supreme Court Joint Appendices.

Records in prior litigation where the Supreme Court recognized a state interest in campaign finance laws are legal argument and are sources that the Court may consider to determine the interests that have already been recognized to uphold laws similar to those challenged here. Courts regularly consider such records in assessing legislative facts and the state interest in a challenged law. *See, e.g., Ognibene,* 599 F. Supp. 2d at 446–47 (considering affidavit from state senator regarding corruption in *Shrink Missouri*); *Shrink Missouri Gov't PAC,* 528 U.S. at 391 (referencing evidence considered by the Court of Appeals in *Buckley v. Valeo* and deeming it "more than sufficient to show why voters would tend to identify a big donation with a corrupt purpose"); *see also* Defs' Proposed Findings of Fact, ¶ 35 (observing, and citing additional evidence, that New Mexico's Task Force expressly considered Supreme Court precedent in evaluating potential state legislation). "[A] statute or ordinance challenged on constitutional grounds can sometimes be upheld on the basis of evidence presented in cases involving challenges to similar statutes or ordinances." *Minutello v. Hartford Life & Acc. Ins. Co.,* 964 F. Supp. 2d 491, 503 (W.D. Pa. 2013).

Indeed, Supreme Court precedent not only permits, but encourages, the consideration of such records. The Court has advised that a State need not recreate a full evidentiary record documenting the purpose of a campaign finance law with each new legal challenge, but can instead rely in part on the evidentiary facts developed in other cases. *Shrink Missouri Gov't PAC*, 528 U.S. at 391 ("The quantum of empirical evidence needed to

*Republican Party of N.M. v. Torrez,* Case No. 1:11-cv-900-WJ-KBM
Defs' Resp. to Pls' Objs. to Evidence Cited in Defs' Proposed Findings of Fact & Concls. of Law
Page **14** of **24**

satisfy heightened judicial scrutiny of legislative judgments will vary up or down with the novelty and plausibility of the justification raised.").

### viii. Beck Amicus Brief.

As with the joint appendices, the Beck Amicus Brief is part of the record that was before the Supreme Court when it rejected a constitutional challenge to similar laws. This amicus brief may be considered by the Court just as it was considered by the Supreme Court in *Colorado II. FEC v. Colo. Republican Fed. Campaign Cmtee.*, 531 U.S. 431, 449–50 (2001) (quoting Beck Brief). Amicus briefs, like law review articles and other scholarly publications, are routinely considered by courts in constitutional challenges when determining legislative facts like the use of campaign contributions by political parties. *See id.*; *FEC v. Cruz*, 142 S. Ct. 1638, 1650 (2022) (citing amicus briefs to evaluate deterrent effect of campaign finance regulation); *cf. Kitchen v. Herbert*, 755 F.3d 1193, 1240 (10th Cir. 2014) (considering the "reams of sociological evidence urged by the parties and the scores of amicus briefs on either side" to determine that State had satisfied its constitutional burden under Fourteenth Amendment analysis).

### II.     The items objected to are relevant because they tend to make more probable the existence of material facts, including apparent and actual quid-pro-quo corruption in New Mexico.

Plaintiffs object to the relevance of the above-listed evidence, arguing that it does not meet the standards of Rule 401 because the *types* of corruption discussed are not an identical match (according to Plaintiffs) with the Supreme Court's definition of "quid pro quo." Pls' Objs., Doc. 276 at 7-8. This evidence, however, is precisely the sort of material

*Republican Party of N.M. v. Torrez*, Case No. 1:11-cv-900-WJ-KBM
Defs' Resp. to Pls' Objs. to Evidence Cited in Defs' Proposed Findings of Fact & Concls. of Law
Page 15 of 24

considered by courts in constitutional challenges to election laws. It more than clears the low hurdle for relevance. Moreover, if there is any question about an exhibit's relevance, the lenient standards of Rule 401 counsel in favor of admissibility. *See Lewis v. N.M. Dep't of Health*, 275 F. Supp. 2d 1319, 1328 (D.N.M. 2003) ("Rule 401 uses a lenient standard for relevance."). All that is required for evidence to be relevant is that it has "*any tendency* to make a fact [of consequence] more or less probable than it would be without the evidence," Fed. R. Evid. 401 (emphasis added), a standard that the Tenth Circuit has described as "liberal" and as setting "the bar very low." *United States v. McVeigh*, 153 F.3d 1166, 1190 (10th Cir. 1998).

Not only do Plaintiffs lack authority for the argument that evidence is irrelevant unless completely analogous, but Plaintiffs also rely on a too-narrow definition of quid-pro-quo corruption. In the campaign contribution context, the Supreme Court has defined quid-pro-quo arrangements as involving "contributions [that] are given to secure a political quid pro quo from current and potential office holders," *Buckley v. Valeo*, 424 U.S. 26 (1976), and spending money in "an effort to control the exercise of an officeholder's official duties." *McCutcheon v. FEC*, 572 U.S. 185, 208 (2014). As well, the Court has acknowledged that limits are permissible even though "few if any contributions to candidates will involve quid pro quo arrangements." *Citizens United v. FEC*, 558 U.S. 310, 357 (2010). Despite Plaintiffs' conclusions to the contrary, New Mexico's evidence generally concerns the existence or appearance of quid-pro-quo corruption. *See* Defs.' Opening Br. on Parties'

*Republican Party of N.M. v. Torrez*, Case No. 1:11-cv-900-WJ-KBM
Defs' Resp. to Pls' Objs. to Evidence Cited in Defs' Proposed Findings of Fact & Concls. of Law
Page **16** of **24**

Mots. Summ. J. at 31–32, ¶ 68, & 56–58 (discussing relevance of similar evidence to State anti-corruption purposes).

Plaintiffs also fail to distinguish between the factfinder's right to weigh evidence, and the Court's gatekeeping function in enforcing the minimum requirements of relevance. These are distinct analyses. *See, e.g., Smith v. Duckworth*, 824 F.3d 1233, 1251 (10th Cir. 2016) (distinguishing between relevance and weight); *Garcia v. Rumsfeld*, No. CV 02-0525 JB/RLP, 2003 WL 27384807, at *24 (D.N.M. Nov. 10, 2003), *aff'd*, 119 F. App'x 196 (10th Cir. 2004) ("While there is no specific time limitation on the relevance of comments to claims of discrimination, the remoteness in time of discriminatory comments may have bearing on the weight given to such evidence."); *Kent v. S. Star Cent. Gas Pipeline, Inc.*, No. 07-1105-JTM, 2008 WL 5330639, at *2 n.4 (D. Kan. Dec. 18, 2008) ("Southern counters that the storage field is a 'heterogeneous' reservoir; therefore, the circumstances found in one part of the field do not prove what might be occurring in another section of the field. This argument goes to the weight to be given to any evidence which plaintiff might discover from reviewing the documents rather than the question of relevance."). In other words, to the extent there is not total identity between the acts of corruption persistently alleged in the state and the types of corruption that meet Plaintiffs' narrow definition of quid pro quo, that speaks to weight and in no way thwarts admissibility. All of the challenged evidence meets the requirement of having any tendency to make a material fact more or less probable and therefore should not be excluded on relevance grounds. Fed. R. Evid. 401.

*Republican Party of N.M. v. Torrez*, Case No. 1:11-cv-900-WJ-KBM
Defs' Resp. to Pls' Objs. to Evidence Cited in Defs' Proposed Findings of Fact & Concls. of Law
Page **17** of **24**

Additionally, the specific examples that Plaintiffs provide of evidence not containing instances of quid-pro-quo corruption are plainly relevant:

### i.   *Richardson Articles.*

In addition to their argument that the Richardson Articles do not document Plaintiffs' precise and narrow definition of quid-pro-quo corruption, Plaintiffs also allege that the Richardson articles are irrelevant because they do not directly involve political parties or independent election activities. Pls' Objs., Doc. 276 at 10. Finally, Plaintiffs contend that the articles are not relevant because "the allegations against Governor Richardson … were never proven, nor any charges brought." *Id.* All of these arguments confuse the question of whether evidence can ultimately prove a fact *definitively* with the basic relevance standard of whether the evidence has a tendency to make a material fact more or less *probable*.

As well, Plaintiffs' contentions that the Richardson Articles do not contain allegations concerning quid-pro-quo corruption or political parties are mistaken. All three articles contain allegations of quid-pro-corruption being investigated by a New Mexico grand jury–including corruption routed through the Democratic Governors' Association. *See, e.g.*, ECF No. 261-2 at 1 (reporting allegations that "Richardson's campaigns and political-action committees received at least $102,300 from brokers hired by money managers seeking to handle $11.7 billion of state trust funds" and that "a New Mexico grand jury was investigating whether an adviser won work on state bond deals because of campaign contributions"); ECF No. 261-3 at 1 (reporting allegations that  a "grand jury in

*Republican Party of N.M. v. Torrez*, Case No. 1:11-cv-900-WJ-KBM
Defs' Resp. to Pls' Objs. to Evidence Cited in Defs' Proposed Findings of Fact & Concls. of Law
Page **18** of 24

New Mexico is currently investigating whether the financial services company CDR funneled more than $100,000 in campaign contributions to Richardson's PAC in order to win state bond and construction finance projects" and that the Democratic Governors' Association, which Richardson chaired, received upwards of $400,000 in contributions from UBS "in order to gain contracts"); *see also* ECF No. 261-1 at 2.

### ii.  New Mexico Senate Book.

The cited chapter of the *New Mexico Senate* book contains a report of a bill banning fireworks being killed by a committee after campaign contributions were made by fireworks industry lobbyists to committee members. ECF No. 261-5 at 101–03 (book page numbering). Plaintiffs argue that the described activities do not constitute a quid-pro-quo arrangement, but only influence, access, and other lawful activities. Pls' Objs., Doc. 276 at 13–14. To be sure, the cited chapter does not definitively determine that the votes on the fireworks bill involved quid-pro-quo corruption, nor is it offered exclusively for that purpose. But the account of campaign contributions by a regulated industry and its lobbyists coinciding with votes to kill a bill outlawing industry activities speaks to actual and apparent quid-pro-corruption, whether such an arrangement actually existed or not. (And, to the extent such an arrangement did exist, it certainly makes the existence of quid-pro-quo corruption more probable.)

### iii. Martinez Articles.

The Martinez Articles are relevant for the same reasons as the Richardson Articles, discussed above. In addition, Plaintiffs' contentions that the Martinez Articles did not

*Republican Party of N.M. v. Torrez*, Case No. 1:11-cv-900-WJ-KBM
Defs' Resp. to Pls' Objs. to Evidence Cited in Defs' Proposed Findings of Fact & Concls. of Law
Page **19** of **24**

allege quid-pro-quo corruption is incorrect. In one, the Albuquerque Journal detailed the results of an investigation into "the political appearances surrounding the deal" wherein Governor Susana Martinez allegedly awarded a significant racino contract to a group from which she "had received $70,000 in contributions." Buster Screwed Us, ECF 261-4 at 6, 10-11, 17 (article page numbering).  In addition, the Martinez Articles contain relevant allegations of the circumvention of campaign finance laws, as they discuss contributions and public perceptions of an entity bidding on the racino contract and being told to route contributions through a different PAC to avoid scrutiny. *See* ECF No. 261-6; ECF No. 261-4 at 21-23.

### iv. Corruption Survey.

Again, the relevance standards of Rule 401 do not require evidence to present a perfect analog before it will be relevant. The survey to which Plaintiffs object compiles individual responses on the highly relevant topic of the appearance of corruption. It is plainly relevant, and to the extent Plaintiffs "may argue that information contained in the report is inapposite for various reasons or that the [proponents] are misusing the report, … [they] can make these arguments … without the need for the report's exclusion." *Jarita Mesa*, 305 F.R.D. at 290.

Furthermore, the opinions of Professor Milyo, on which Plaintiffs seek to rely so heavily, rely on generic surveys of exactly this type. To the extent that the Court accepts Plaintiffs' limited definition of relevance, Professor Milyo's reports should then also be

*Republican Party of N.M. v. Torrez*, Case No. 1:11-cv-900-WJ-KBM
Defs' Resp. to Pls' Objs. to Evidence Cited in Defs' Proposed Findings of Fact & Concls. of Law
Page **20** of **24**

excluded. *See* Defs' Evidentiary Objs. to Documents Cited in Pls' Requested Findings of Fact, at 6-7 (applying Plaintiffs' relevance arguments to Milyo's supplemental report).

### v. Common Cause & NM Watch Reports.

While these reports do not purport to conclude that "legislators are trading votes for campaign contributions," Pls' Objs., Doc. 276 at 23, their allegations that campaign contributions from regulated industries are correlated with votes on bills involving those industries is relevant to the State's interest in preventing the appearance of quid-pro-quo corruption. *See* ECF No. 261-7 at 39 (observing and contributing to public discourse on manner in which  such correlations "can erode trust in government" and that "rigorous campaign contribution limits" can combat this erosion); *see also* ECF No. 261-8 at 64–65 (report numbering). The correlation of campaign contributions by regulated industries with votes on bills affecting such industries is evidence supporting the appearance of quid-pro-quo corruption.

### vi. Wisconsin Articles.

With regard to the Wisconsin Articles, Plaintiffs first repeat their argument that evidence is not relevant if it does not prove their narrow definition of quid-pro-quo corruption. In addition to the flaws with this argument noted above, the Wisconsin Articles are relevant allegations and public reports of political parties (specifically, county parties) being used as conduits to circumvent contribution limits. *See* Defs' Proposed Findings of Fact, ¶ 73.  Plaintiffs then challenge the relevance of the Wisconsin Articles because they are from another state. Plaintiffs assert that "evidence from other jurisdictions" is only

*Republican Party of N.M. v. Torrez*, Case No. 1:11-cv-900-WJ-KBM
Defs' Resp. to Pls' Objs. to Evidence Cited in Defs' Proposed Findings of Fact & Concls. of Law
Page **21** of **24**

relevant if it is "'reasonably believed' to be relevant to the problem New Mexico seeks to solve with its regulations." Pls' Objs., Doc. 276 at 27 (quoting *Homans v. City of Albuquerque*, 366 F.3d 900, 909 (10th Cir. 2004). To begin, the Wisconsin Articles meet this standard, as the articles allege the use of county parties by major political donors to circumvent contribution limits. In addition, the Supreme Court has already rejected the argument that evidence from other jurisdictions is not relevant in constitutional challenges, permitting "litigants to justify speech restrictions by reference to studies and anecdotes pertaining to different locales altogether...." *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 555 (2001); *Fla. Bar v. Went For It, Inc.*, 515 U.S. 618, 628 (1995) (same); *see also Brown v. City of Pittsburgh*, 586 F.3d 263, 280 n.17 (3d Cir. 2009) ("[L]egislatures may look outside of their own regional jurisdictions for evidence substantiating the problem to which a given regulation is addressed.").

### vii. Supreme Court Joint Appendices.

Plaintiffs' relevance objections to the Joint Appendices are based on their same arguments that the Court should not consider evidence not proving narrowly defined quid-pro-quo corruption and should exclude evidence from other jurisdictions. Both arguments are addressed above.

In addition, Plaintiffs single out one declaration within one of the joint appendices in order to claim that it describes only non-quid-pro-quo corruption. Pls' Objs., ECF No. 276 at 38. But the cited page ranges discuss both quid-pro-quo and generic corruption. Jt. App'x, *Colo. II*, 2000 WL 33981443, at *269a-270a (U.S. Dec. 1, 2000). In addition to noting

*Republican Party of N.M. v. Torrez*, Case No. 1:11-cv-900-WJ-KBM
Defs' Resp. to Pls' Objs. to Evidence Cited in Defs' Proposed Findings of Fact & Concls. of Law
Page 22 of 24

generic issues of "access" and "gratitude," Senator Simon's declaration states that large contributors sought–and received–"legislative favors in exchange for their contributions." *Id.* Moreover, as described above, even facts of non-quid-pro-quo corruption satisfy the low threshold of relevance to the extent that they make the existence of quid-pro-quo corruption or its appearance more probable.

### viii. Beck Amicus Brief.

Plaintiffs' relevance objections to the Beck Amicus Brief are also based on the arguments that the Court should exclude evidence not proving narrowly defined quid-pro-quo corruption or from other jurisdictions. Both arguments are addressed above.

Furthermore, the Beck Amicus Brief rebuts Plaintiffs' repeated contentions that parties themselves are impervious to corruption. *See, e.g.,* Pls' Requested Findings of Fact, ¶ 139. It is also relevant to the evidence that had been considered by, and state interests recognized by, the Supreme Court in contribution limits cases by the time New Mexico adopted the challenged limits. *See* Defs' Proposed Findings of Fact, ¶ 35 ("The Task Force reasoned, in its 'Justification' for the proposal to establish contribution limits, that the 'United States Supreme Court has recognized that campaign contribution limits may serve a state's compelling interest in preventing corruption and the appearance of corruption in the political process." (citing Task Force Report, ECF No. 242-2, and Dep. of Stuart Bluestone, ECF No. 242-1)).

* * *

*Republican Party of N.M. v. Torrez,* Case No. 1:11-cv-900-WJ-KBM
Defs' Resp. to Pls' Objs. to Evidence Cited in Defs' Proposed Findings of Fact & Concls. of Law
Page 23 of 24

For the above reasons, New Mexico respectfully requests the Court overrule Plaintiffs' Objections, Doc. 276, in full.

Respectfully Submitted,

By: */s/Kelsey Frobisher Schremmer*
Nicholas M. Sydow
Deputy Solicitor General
Karl Rysted
Kelsey Frobisher Schremmer
Assistant Attorneys General
201 Third Street NW, Suite 300
Albuquerque, NM  87102
Tel.: (505) 717-3571
Fax: (505) 490-4881
nsydow@nmag.gov
krysted@nmag.gov
kschremmer@nmag.gov

*Attorneys for Defendants Raúl Torrez, Maggie Toulouse Oliver, Sam Bregman, Gerald Byers, and Dianna Luce*

## CERTIFICATE OF SERVICE

I certify that on March 24, 2023, I served the foregoing on counsel of record for all parties via the CM/ECF system.

*/s/Kelsey Frobisher Schremmer*
Kelsey Frobisher Schremmer

*Republican Party of N.M. v. Torrez*, Case No. 1:11-cv-900-WJ-KBM
Defs' Resp. to Pls' Objs. to Evidence Cited in Defs' Proposed Findings of Fact & Concls. of Law
Page **24** of 24