IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**REPUBLICAN PARTY OF NEW MEXICO**;
**REPUBLICAN PARTY OF DOÑA ANA COUNTY**;
**REPUBLICAN PARTY OF BERNALILLO COUNTY**;
**RIGHT TO LIFE COMMITTEE OF NEW MEXICO**;
**NEW MEXICO TURN AROUND**;
**HARVEY YATES**; and **JALAPEÑO CORPORATION**,

        Plaintiffs,

v.                                      No: 1:11-cv-900-WJ-KBM

**RAÚL TORREZ**, in his official capacity, New Mexico Attorney General; **MAGGIE TOULOUSE OLIVER**, in her official capacity, New Mexico Secretary of State; and District Attorneys **SAM BREGMAN**, **GERALD BYERS**, and **DIANNA LUCE**, in their official capacities,

        **Defendants.**

## COURT'S FINDINGS OF FACT AND CONCLUSIONS OF LAW FOR BENCH TRIAL

**THIS MATTER** is before the Court on a bench trial on the written record following eleven years of litigation over the constitutionality of New Mexico's campaign finance laws as codified in the Campaign Reporting Act ("CRA"), NMSA 1978, § 1-19-26 to -37 (2019). The Court's Findings of Fact ("FOF") and Conclusions of Law ("COL") are accompanied by a memorandum opinion and order filed on the same day. As required by Federal Rule of Civil Procedure 52(a), the Court finds the facts and states its conclusions of law as follows:

**COL 1.**    Jurisdiction and venue are proper in this Court.

**COL 2.**    Plaintiffs have standing to bring all claims. *See* **Doc. 256**.

**COL 3.**    Plaintiffs' challenges are facial, not as-applied challenges.

        **FOF 3.A.**    Plaintiffs' challenges have characteristics of both as-applied and facial challenges.

        **FOF 3.B.**    But the relief Plaintiffs seek in all counts of the Third Amended Complaint (**Doc. 160**) extends beyond Plaintiffs' particular case.

## COUNT I: $27,500 LIMIT ON CONTRIBUTIONS TO STATE POLITICAL PARTIES

**COL 4.**    New Mexico's limit on contributions from persons and political committees to state political parties is constitutional.

        **FOF 4.A.**    New Mexico places a $27,500 limit on contributions from persons and political committees to state political parties. NMSA 1978, §§ 1-19-34.7(A)(1), (C) (2019).

        **FOF 4.B.**    The limit is per election cycle, meaning the limit doubles for an election with a primary and general election. § 1-19-34.7(A)(1).

        **FOF 4.C.**    By statute, this limit automatically adjusts with inflation. § 1-19-34.7(F); https://www.sos.nm.gov/candidate-and-campaigns/how-to-become-a-candidate/campaign-contribution-limits/.

**COL 5.**    Prevention of circumvention and actual or apparent *quid pro quo* corruption is neither a novel nor implausible reason to limit contributions to state political parties.

        **FOF 5.A.**    The Supreme Court has found circumvention and actual or apparent *quid pro quo* corruption to be neither novel nor implausible justifications for limits on contributions to political parties. *McConnell*, 540 U.S. at 144; *Colorado II*, 533 U.S. at 456; *Shrink*, 528 U.S. at 391.

        **FOF 5.B.**    The Supreme Court's *McConnell* decision demonstrates why New Mexico's interest in limiting contributions to state political parties is neither novel nor implausible.

**COL 6.**    The State has a sufficiently important interest in limiting contributions to state political parties to prevent circumvention and actual or apparent *quid pro quo* corruption.

**COL 7.**    The record contains evidence of the State's need to address actual or apparent *quid pro quo* corruption through limits on contributions to state political parties in New Mexico.

**COL 8.**    The federal convictions of Phillip Troutman and Kenneth Johnson demonstrate the risk of *quid pro quo* corruption involving contributions to political parties and political party committees.

        **FOF 8.A.**    New Mexico's State Investment Officer, Troutman, and Deputy State Treasurer, Johnson, were convicted of federal conspiracy to commit extortion. *United States v. Troutman*, 814 F.2d 1428, 1432 (10th Cir. 1987).

        **FOF 8.B.**    Troutman and Johnson were convicted for soliciting $2,000 in contributions to the Democratic Leadership Fund from a bank being considered for a major state contract. *Id.* at 1434-35.

        **FOF 8.C.**    Troutman told the bank it would only receive the state contract if it contributed the $2,000 to the Democratic Leadership Fund. *Id.*

        **FOF 8.D.**    The Tenth Circuit in Troutman's case upheld the district court's determination "that the solicitation was made on a '*quid pro quo*' basis." *Id.* at 1455–56.

**COL 9.**    The "pay-to-play" allegations against Governor Bill Richardson demonstrate the State's need to address the appearance of *quid pro quo* corruption in the context of contributions to political party entities.

        **FOF 9.A.**    In 2008, Governor Richardson came under federal investigation for pay-to-play schemes, including allegations that he awarded $38 million in state contracts to a private prison corporation that contributed over $66,500 to Richardson's campaigns and $30,000 to the Democratic Governors Association while Richardson was chair. **Doc. 122-8**.

        **FOF 9.B.**    Governor Richardson was also accused of awarding approximately $1.4 million in state contracts to a California company that contributed $100,000 to two PACs controlled by Richardson and $10,000 to his re-election campaign. **Docs. 122-6, 122-7, 122-9**.

        **FOF 9.C.**    The public was aware of the political corruption scandals surrounding Governor Richardson when the Campaign Reform Act of 2009 was being debated. **Doc. 242-1** (Bluestone Dep. at 51:12-52:1-9).

        **FOF 9.D.**    The public was so aware of the alleged scandal that Richardson pulled out from consideration as President Obama's Commerce Secretary. **Docs. 122-6, 122-7**.

**COL 10.**    Evidence that donors often contribute money to candidates from both state political parties demonstrates the risk of *quid pro quo* corruption or its appearance involving contributions to political parties.

        **FOF 10.A.**    In 2022 the same donors contributed to both Republican and Democratic gubernatorial candidates. *See* Democrat Lujan Grisham's Third General Report (reporting $5,000 contribution from Pueblo of

|  |  |
|---|---|
|  | Santa Ana on November 1, 2022); Republican Ronchetti's Second General Report (reporting $10,400 contribution from Pueblo of Santa Ana on October 3, 2022); Democrat Lujan Grisham's First General Report (reporting $10,000 contribution by BW Gas Convenience, LLC d/b/a Allsup's on August 22, 2022); Republican Ronchetti's First General Report (reporting $9,000 contribution by Allsup's on August 23, 2022). N.M. Sec'y of State, Campaign Finance System, https://login.cfis.sos.state.nm.us/#/index. |
| **COL 11.** | Evidence from national litigation challenging the constitutionality of campaign contribution limits demonstrates the risk of *quid pro quo* corruption or its appearance involving contributions to political parties. |
| **FOF 11.A.** | *See, e.g.*, Joint Appendix, *McConnell v. FEC*, 2003 WL 22070885 (U.S. Aug. 15, 2003) (record in constitutional challenge to BCRA's limits on soft money contributions to parties) (*e.g.*, Decl. of Sen. John McCain, ¶¶ 4-11 (J.A. 390-94) (describing examples of, at a minimum, the appearance of quid-pro-quo corruption involving contributions to political parties); Decl. of Sen. Warren Rudman, ¶¶ 7-12 (J.A. 742-44) (describing actual and apparent exchange of contributions–including through political parties–for actions by members of Congress); Decl. of Sen. Alan Simpson, ¶¶ 10-14 (J.A. 811-12) (describing apparent and actual quid-pro-corruption involving contributions to political parties)); Joint Appendix, *FEC v. Colo. Republican Fed. Campaign Cmtee.*, 2000 WL 33981443 (U.S. Dec. 1, 2000) (record in constitutional challenge to FECA's coordinated expenditure limits) (*e.g.*, Decl. of Robert Hickmott (J.A. 243a-261a) (describing facilitation of contributions between donors and candidates by Democratic Party, including "tally system" by which party credited contributions to candidates; Decl. of Robert Rozen (J.A. 262a-266a) (same); Decl. of Sen. Paul Simon, ¶¶ 6–7 (J.A. 268a–269a) (same); Decl. of Sen. Timothy E. Wirth (J.A. 272a-278a) (same)); Amicus Br. of Beck et al., *FEC v. Colo. Republican Fed. Campaign Cmtee.*, 2000 WL 1792974 (U.S. Dec. 1, 2000) (brief by political scientists describing how parties can facilitate interactions between candidates and donors and how parties do not break chain of corruption). |
| **COL 12.** | The record contains evidence of the threat of circumvention of valid contribution limits by routing contributions through state political parties in New Mexico. |
| **FOF 12.A.** | The record contains evidence of the close relationship between the New Mexico State Republican Party ("NMGOP") and its candidates. **Doc. 122-18** (Cangiolosi Dep. at 20:8-21:13; **Doc. 242-3** (Tinnin Dep. at 20:7-21:9, 21:20-25). |
| **FOF 12.B.** | NMGOP provides its candidates with campaign assistance, strategic |

4

|   |   |   |
|---|---|---|
|   |   | advice, messaging, trainings, and workshops. **Doc. 122-18** (Cangiolosi Dep. at 20:8-21:13, 64:21-65:5, 66:8-67:16, 82:1-17); **Doc. 242-3** (Tinnin Dep. at 20:7-21:9, 21:20-25). |
|   | **FOF 12.C.** | NMGOP often coordinates joint rallies, fundraising events, mailers, and get-out-the-vote activities with its candidates. **Doc. 122-18** (Cangiolosi Dep. at 49:7-50:9, 51:6-23, 66:8-67:16). |
|   | **FOF 12.D.** | Former Plaintiff Mark Veteto testified to the importance of these types of fundraisers as ways for donors to meet candidates and that his presence at fundraisers and the like allowed him access to former Governor Susana Martinez, including the ability to email, text, and call her. **Doc. 122-12** (Veteto Dep. at 27:3-24). |
|   | **FOF 12.E.** | NMGOP maintains a donor list and at times provides candidates with donor information, including the names of individual donors. **Doc. 122-18** (Cangiolosi Dep. at 64:9-20, 66:10-12). |
|   | **FOF 12.F.** | In the past, NMGOP has discussed with donors how their contribution to the party would be used, including discussions of specific political campaigns and individual candidates. **Doc. 122-18** (Cangiolosi Dep. at 89:9-24). |
|   | **FOF 12.G.** | Plaintiff Harvey Yates testified that while he was chair of NMGOP "[i]f the individual was interested, for instance, primarily in electing a senate candidate or changing congress, then the money would be put on the federal side to the extent it was permitted." **Doc. 122-11** (Yates Dep. at 18:15-18). |
| **COL 13.** | The limits on contributions to state political parties are closely drawn to the State's interest in preventing circumvention and actual or apparent *quid pro quo* corruption. ||
|   | **FOF 13.A.** | CRA's $27,500/election cycle limit on contributions to state political parties is not substantially lower than limits previously upheld by the Supreme Court. *See McConnell*. 540 U.S. at 156 (upholding complete ban on soft-money contributions to national political parties). |
|   | **FOF 13.B.** | CRA's $27,500/election cycle limit on contributions to state political parties is not substantially lower than comparable limits in other states. *See* "Limits on Contributions to State Political Parties" Table in Memorandum Opinion and Order. **Doc. 287.** |
|   | **FOF 13.C.** | CRA's $27,500/election cycle limit on contributions to state political parties is higher—and often substantially higher—than the comparable limits imposed in 20 states. *See* "Limits on Contributions to State Political Parties" Table in Memorandum Opinion and Order. **Doc. 287.** |

|  |  |  |
|---|---|---|
| | **FOF 13.D.** | CRA's contribution limits adjust with inflation. § 1-19-34.7(F). |
| **COL 14.** | | The State has carried its burden and shown (1) a sufficiently important interest in limiting contributions to political parties, and (2) the specific limit imposed is closely drawn. |
| **COL 15.** | | The Court defers to the New Mexico legislature's judgment and upholds CRA's limit on contributions to state political parties. |
| **COL 16.** | | The Court dismisses Count I with prejudice. |

### COUNT II: $27,500 LIMIT ON CONTRIBUTIONS FROM NATIONAL TO STATE POLITICAL PARTIES

|  |  |  |
|---|---|---|
| **COL 17.** | | CRA does not apply to contributions from national political parties to state political parties for federal election campaigns. |
| | **FOF 17.A.** | The State agrees that CRA does not apply to funds for federal campaigns that are subject to the Federal Election Campaign Act, 52 U.S.C. § 30116(a)(4). **Doc. 282 at 32; Doc. 275**. |
| | **FOF 17.B.** | On preliminary injunction, this Court previously held CRA does not apply to contributions from national to state political parties for federal election campaigns. *King*, 850 F. Supp. 2d at 1215. |
| | **FOF 17.C.** | The 2019 amendments to CRA made it even clearer that CRA does not limit contributions for federal elections. *See* §§ 1-19-26(K), (G), (H)(1), (S); *see also* N.M. State Ethics Comm'n, Advisory Op. 2021-05, at 3–4 (Feb. 5, 2021), https://www.sec.state.nm.us/wp-content/uploads/2021/02/Advisory-Op.-2021-05-Signed.pdf. |
| **COL 18.** | | Plaintiffs' claim fails because there is nothing to challenge. |
| **COL 19.** | | The Court dismisses Count II with prejudice. |

### COUNT III: $5,500 LIMIT ON CONTRIBUTIONS FROM STATE TO COUNTY POLITICAL PARTIES

|  |  |  |
|---|---|---|
| **COL 20.** | | New Mexico's limit on contributions from state to county political parties is unconstitutional. |
| | **FOF 20.A.** | New Mexico places a $5,500 limit on contributions from state political parties to county political parties. NMSA 1978, §§ 1-19-34.7(A)(1), (E) (2019). |

  **FOF 20.B.** The limit is per election cycle, meaning the limit doubles for an election with a primary and general election. § 1-19-34.7(A)(1).

  **FOF 20.C.** By statute, this limit automatically adjusts with inflation. § 1-19-34.7(F); https://www.sos.nm.gov/candidate-and-campaigns/how-to-become-a-candidate/campaign-contribution-limits/.

**COL 21.** The State seeks to prevent circumvention through a novel contribution limit—i.e., a limit on contributions from state to county parties.

**COL 22.** The State fails to provide sufficient evidence that no limits on state-to-county party contributions would create a serious threat of circumvention.

  **FOF 22.A.** The close relationship between state and county parties does not hold the same risk of circumvention as the close relationship between state parties and candidates.

  **FOF 22.B.** Evidence of a close relationship between the state and county chair of the Republican party—absent any other evidence—is not enough to justify this contribution limit.

  **FOF 22.C.** The State has not put on evidence of a serious risk of donors circumventing valid contribution caps by donating money to a state party with the intention that the money be donated to a county party so that the money can ultimately be donated to a candidate in exchange for a *quid pro quo* arrangement or the appearance of one.

  **FOF 22.D.** The Wisconsin newspaper articles relied on by the State do not show circumvention based on contributions from state to county parties. ***See*** **Doc. 261-14**; **Doc. 261-15**.

  **FOF 22.E.** These articles do not deal with contributions from a state party to a county party.

  **FOF 22.F.** On the contrary, both articles suggest there was no coordination between the Republican Party of Wisconsin and the county Republican Party allegedly involved in the circumvention scheme.

  **FOF 22.G.** Instead of demonstrating the risk unlimited contributions between state and county parties pose, the articles show the risk created by unlimited contributions from county parties to candidates.

  **FOF 22.H.** The limit on state-to-county-party contribution, like the aggregate contribution limit in *McCutcheon* and the limit on post-election contribution repayment in *Cruz*, is a prophylaxis-upon-prophylaxis approach by which the State seeks to prevent the circumvention of

7

|          |                                                                                                                                                                                                              |
|----------|--------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|          | valid base limits on individual donors by layering on two additional limits, each one more removed than the next.                                                                                            |
| **FOF 22.I.** | The limit on contributions between state and county parties is too attenuated from the root concern of *quid pro quo* corruption between individuals and candidates. |

**COL 23.** Because the Court holds the State has not shown a sufficiently important interest, the Court need not address the issue of whether the limit is closely drawn.

**COL 24.** Plaintiffs' Count III challenge to the limits in Sections 1-19-34.7(A)(1) and (E) on contributions from state to county political parties prevails.

**COL 25.** The Court declares this provision of CRA unconstitutional and enjoins the State from enforcing it.

## COUNTS IV, V: $5,500 LIMIT ON CONTRIBUTIONS FROM STATE PARTIES TO NONGUBERNATORIAL CANDIDATES; $11,000 LIMIT ON CONTRIBUTIONS FROM STATE PARTIES TO GUBERNATORIAL CANDIDATES

**COL 26.** New Mexico's limit on contributions from state political parties to nongubernatorial and gubernatorial candidates is unconstitutional.

    **FOF 26.A.** New Mexico places a $5,500 limit on contributions from state political parties to nongubernatorial candidates or candidate committees. NMSA 1978, § 1-19-34.7(A)(1) (2019).

    **FOF 26.B.** New Mexico places a $11,000 limit on contributions from state political parties to gubernatorial candidates or candidate committees. § 1-19-34.7(B).

    **FOF 26.C.** These limits are per election cycle, meaning the limits double for an election with a primary and general election. § 1-19-34.7(A)(1).

    **FOF 26.D.** By statute, these limits automatically adjust with inflation. § 1-19-34.7(F); https://www.sos.nm.gov/candidate-and-campaigns/how-to-become-a-candidate/campaign-contribution-limits/.

    **FOF 26.E.** In support of its **COL.26**, the Court incorporates **FOF 30.A-30.E, 31.A-31.F, and 34.A-34.L**, below.

**COL 27.** Preventing circumvention is not a novel or implausible reason to limit party-to-candidate contributions.

    **FOF 27.A.** The Supreme Court's *Colorado II* decision makes clear that circumvention is a plausible—and not novel—justification for

8

|  |  |  |
|---|---|---|
|  |  | imposing limits on the contributions political parties can make to candidates. *Colorado II*, 533 U.S. at 456. |
|  | **FOF 27.B.** | *Colorado II* governs the Court's analysis of whether the State has shown a sufficiently important interest in limiting contributions from state parties to state candidates. |
| **COL 28.** | | The State has a sufficiently important interest in limiting contributions from state parties to candidates to prevent circumvention. |
|  | **FOF 28.A.** | The record suggests unlimited campaign contributions from political parties to candidates would create a serious risk of circumvention in New Mexico. |
|  | **FOF 28.B.** | NMGOP works closely with its Republican candidates and provides its candidates with campaign assistance and strategic advice, often coordinating joint rallies and fundraising events with candidates. **Doc. 122-18** (Cangiolosi Dep. at 20:8-21:13, 49:7-50:9, 51:6-23, 64:21-65:5, 66:8-67:16, 82:1-17); **Doc. 242-3** (Tinnin Dep. at 20:7-21:9, 21:20-25). |
|  | **FOF 28.C.** | Testimony of Mark Veteto demonstrates the importance of fundraisers as ways for donors to meet candidates: Mr. Veteto testified that his presence at State Republican fundraisers and the like allowed him access to Governor Susana Martinez, including the ability to email, text, and call her. **Doc. 122-12** (Veteto Dep. at 27:3-24). |
|  | **FOF 28.D.** | NMGOP maintains party donor lists and has in the past provided candidates with donor information, including the names of individual donors. **Doc. 122-18** (Cangiolosi Dep. at 64:9-20, 66:10-12). |
|  | **FOF 28.E.** | NMGOP has talked with donors about how their contribution would be used, including to which candidate the funds will go. **Doc. 122-18** (Cangiolosi Dep. at 89:9-24); **Doc. 122-11** (Yates Dep. at 18:15-18). |
|  | **FOF 28.F.** | This evidence is the same kind of evidence the Supreme Court considered in *Colorado II*. |
|  | **FOF 28.G.** | The record suggests donors in New Mexico may give to NMGOP "with the tacit understanding that the favored candidate will benefit." *Colorado II*, 533 U.S. at 458. |
|  | **FOF 28.H.** | While there is no specific evidence of NMGOP tallying party contributions to route them to a particular candidate, the State's evidence suggests NMGOP discussed how contributions to the party would be used with donors and took into consideration whether the |

donor was interested in electing a particular candidate.

**FOF 28.I.** The evidence that NMGOP shared donor lists and information with candidates and hosted joint fundraising events for candidates suggests that contributions to NMGOP could turn the party "into matchmakers whose special meetings and receptions give the donors the chance to get their points across to the candidates." *Colorado II*, 533 U.S. at 461.

**FOF 28.J.** The record contains testimony that a match was in fact made between Mr. Veteto and Governor Martinez at a fundraising event, resulting in Mr. Veteto's ability to email, text, and call the Governor.

**FOF 28.K.** The disparity between CRA's individual-to-candidate limits and CRA's individual-to-party limits suggests a risk, like that identified in *Colorado II*, of candidates seeking to funnel contributions through political parties to avoid individual-to-candidate limits.

**FOF 28.L.** Under CRA, individuals cannot contribute more than $5,500 to a nongubernatorial candidate and more than $11,000 to a gubernatorial candidate per election cycle.

**FOF 28.M.** However, CRA's limit on contributions from individuals to state political parties is set higher at $27,500.

**FOF 28.N.** The disparity between these two limits means that a candidate could collect six times the contributions if contributions were passed through a party that could make unlimited contributions to a candidate.

**FOF 28.O.** For example, if "a candidate could arrange for a party committee to foot his bills, to be paid with [$27,500] contributions to the party by his supporters, the number of donors necessary to raise $100,000 could be reduced from approximately [18] (at [$5,500] per cycle) to approximately [3] (at [$5,500] to the candidate and [$27,500] to the party . . . .)." *Colorado II*, 533 U.S. at 460.

**FOF 28.P.** If state parties were permitted to make unlimited contributions to candidates in New Mexico, "the inducement to circumvent would almost certainly intensify." *Colorado II*, 533 U.S. at 460.

**COL 29.** The limits on contributions from state political parties to nongubernatorial and gubernatorial candidates are not closely drawn.

**COL 30.** New Mexico's limits on contributions from state parties to candidates raise *Randall* danger signs.

**FOF 30.A.** New Mexico's limits on contributions by state political parties to

      candidates are substantially lower than limits previously upheld by the Supreme Court.

**FOF 30.B.**  The CRA limits at issue are currently $5,500 for nongubernatorial candidates and $11,000 for gubernatorial candidates per election cycle.

**FOF 30.C.**  When there is a primary and general election, a state party could contribute up to $11,000 to nongubernatorial candidates and $22,000 for gubernatorial candidates.

**FOF 30.D.**  These rates are far lower than those upheld in *Colorado II*.

**FOF 30.E.**  In *Colorado II*, the Supreme Court upheld the federal limits on the coordinated-expenditure contributions political parties could make to federal candidates. At the time—in 2000—the federal limits ranged from $67,560 to $1,636,438 for Senate candidates and $33,780 for House candidates in most states and $67,560 for House candidates in states with only one representative. 533 U.S. at 439 n.3. These limits have since been adjusted for inflation in 2023 to range from $118,700 to $3,623,400 for Senate candidates; $118,700 for House candidates in states with only one representative; and $59,400 for House candidates in all other states. https://www.fec.gov/help-candidates-and-committees/making-disbursements-political-party/coordinated-party-expenditures/coordinated-party-expenditure-limits/.

**COL 31.**  New Mexico's limits on contributions from state political parties to candidates are substantially lower than comparable limits in most other States.

**FOF 31.A.**  New Mexico's current limit on contributions state parties can make to gubernatorial candidates is substantially lower than comparable limits in 36 other States, including **Alabama** (unlimited); **Alaska** ($100,000/year); **Arizona** ($80,400/election cycle); **California** (unlimited); **Colorado** ($789,025/election cycle); **Connecticut** ($50,000/election cycle); **Delaware** ($75,000/election period); **Florida** ($250,000/candidate); **Illinois** (unlimited for general election; $274,200 for primary); **Indiana** (unlimited); **Iowa** (unlimited); **Kansas** (unlimited for general; $2,000 for contested primary); **Kentucky** (unlimited); **Louisiana** (unlimited); **Michigan** ($750,000 with public funding, $166,500 without public funding); **Minnesota** ($20,000/two-year period); **Mississippi** (unlimited); **Montana** ($100,000/governor and lieutenant governor filing jointly); **Nebraska** (unlimited); **New Jersey** (unlimited); **New York** (unlimited); **North Carolina** (unlimited); **North Dakota** (unlimited); **Ohio** ($874,182.62/candidate); **Oregon** (unlimited); **Pennsylvania** (unlimited); **South Carolina** ($50,000/election cycle); **South Dakota** (unlimited); **Tennessee** ($477,300/election);

11

       **Texas** (unlimited); **Utah** (unlimited); **Vermont** (unlimited); **Virginia** (unlimited); **Washington** ($5,765,902.80/candidate); **Wisconsin** (unlimited); and **Wyoming** (unlimited).

**FOF 31.B.** New Mexico's current limit on contributions state parties can make to all other state and local candidates is substantially lower than the 20 states that place no limit on the amount political parties can contribute to candidates. *See* "State Party to Candidate Contribution Limits" Table in Memorandum Opinion and Order. **Doc. 287.**

**FOF 31.C.** The question of whether New Mexico's limit is substantially lower than comparable limits enacted in other states is complicated by the fact that 22 states have enacted different limits depending on the specific office a candidate seeks. *See* "State Party to Candidate Contribution Limits" Table in Memorandum Opinion and Order. **Doc. 287.**

**FOF 31.D.** New Mexico has enacted only two limits: one for gubernatorial candidates and one for all other candidates.

**FOF 31.E.** Because New Mexico limits contributions to nongubernatorial statewide candidates at the same level as local candidates, New Mexico's limit—at least for statewide candidates—is substantially lower than the limit enacted in 40 states. *See* "State Party to Candidate Contribution Limits" Table in Memorandum Opinion and Order. **Doc. 287.**

**FOF 31.F.** New Mexico's limit for senate candidates is substantially lower than comparable limits in 33 states. *See* "State Party to Candidate Contribution Limits" Table in Memorandum Opinion and Order. **Doc. 287.**

**COL 32.** Although New Mexico's limits on party contributions to both gubernatorial and nongubernatorial candidates are not the lowest in the Nation, New Mexico's limits are "sufficiently low as to generate suspicion that they are not closely drawn." *Randall*, 548 U.S at 249.

**COL 33.** Having found two danger signs, the Court must independently review the record to determine whether New Mexico's limits are "closely drawn to avoid unnecessary abridgment of associational freedoms." *Buckley*, 424 U.S. at 25.

**COL 34.** New Mexico's limits on contributions state political parties can make to candidates are not closely drawn.

**FOF 34.A.** The limits appear untethered to any data on how much it would cost to run a competitive campaign for a particular New Mexico office.

**FOF 34.B.**  The State fails to account or provide any justification for limiting other statewide offices, such as Attorney General or Secretary of State, at the same lower level as local or regional candidates.

**FOF 34.C.**  Evidence that the 2006 Governor's Ethics and Campaign Finance Reform Task Force Subcommittee on Campaign Finance considered how much it would cost for a Public Regulation Commission ("PRC") candidate to run for office is not enough to demonstrate that the low limit for all statewide candidates, except gubernatorial candidates, is closely drawn. **Doc. 261-11 at 6** (discussing PRC campaigns).

**FOF 34.D.**  There is no evidence New Mexico considered how much it would cost to run a campaign other than a PRC campaign.

**FOF 34.E.**  There is no evidence New Mexico considered the cost for a challenger to run an effective statewide campaign against an incumbent.

**FOF 34.F.**  The Supreme Court has recognized that generally "competitive races are likely to be far more expensive than the average race." *Randall*, 548 U.S. at 255.

**FOF 34.G.**  It is not reasonable to assume all statewide candidates, except gubernatorial candidates, should be limited at the same low level as local and district candidates to prevent circumvention or *quid pro quo* corruption.

**FOF 34.H.**  In *Randall*, Justice Breyer found Vermont's "insistence that political parties abide by *exactly* the same low contribution limits that apply to other contributors threaten[ed] harm to a particularly important political right, the right to associate in a political party." 548 U.S. at 256.

**FOF 34.I.**  New Mexico imposes the same contribution limits on individuals as it does on state political parties.

**FOF 34.J.**  This hypothetical illustrates why limiting the contributions a party can make at the same level as individuals threatens to harm the right to associate in a political party:

Imagine that 6,000 New Mexicans would like to give $100 to NMGOP "because, though unfamiliar with the details of the individual race, they would like to make a small financial contribution to the goal of electing a [Republican] state legislature." *Randall*, 548 U.S. at 258. Now the party would have $600,000. Further imagine that NMGOP "believes control of the legislature will depend on the outcome of three (and only three) House races." *Id.* CRA would prohibit NMGOP from contributing more than $11,000 to each legislative candidate in these

13

|  |  |  |
|---|---|---|
|  |  | pivotal races, "thereby thwarting the aims of the 6,000 donors from making a meaningful contribution to state politics by giving a small amount of money to the party they support." *Id.* In other words, the party would be able to meaningfully use only $33,000 of the $600,000 it received from small donations. |
|  | **FOF 34.K.** | New Mexico's current limits on contributions parties can make to candidates "would severely inhibit collective political activity by preventing a political party from using contributions by small donors to provide meaningful assistance to any individual candidate." *Randall*, 548 U.S. at 258. |
|  | **FOF 34.L.** | The record contains no "special justification" warranting such a low limit for nongubernatorial statewide candidates. |
| **COL 35.** | Plaintiffs' Count IV and V challenges to the limits in Sections 1-19-34.7(A)(1) and (B) on contributions from state political parties to candidates prevails. |
| **COL 36.** | The Court declares CRA's limits on party-to-candidate contributions unconstitutional and enjoins the State from enforcing the relevant provisions. |

## COUNT IX: INDEPENDENT-ELECTION-ACTIVITIES CHALLENGE

|  |  |  |
|---|---|---|
| **COL 37.** | Plaintiffs' claim fails because CRA does not regulate the independent election activities Plaintiffs would like to engage in. |
.
|  | **FOF 37.A.** | The independent election activities Plaintiffs would like to engage in—i.e., get-out-the-vote and voter-registration activities—are not subject to CRA's contribution limits. *See* §§ 1-19-26(H), (S). |
|  | **FOF 37.B.** | Administrative expenses that are part of an independent expenditure are *already* exempt from CRA's contribution limits. § 1-19-34.7(I). |
| **COL 38.** | The Court dismisses Count IX with prejudice. |

## COUNT VI: "APPEAL TO VOTE" DEFINITION

|  |  |  |
|---|---|---|
| **COL 39.** | The CRA's "appeal to vote" definition is not overbroad or unconstitutionally vague. |
|  | **FOF 39.A.** | CRA defines "independent expenditure" as an expenditure for an advertisement "susceptible to no other reasonable interpretation than as an **appeal to vote** for or against a clearly identified candidate or ballot question." § 1-19-26(N)(3)(b) (emphasis added). |

14

**FOF 39.B.** The Tenth Circuit has already rejected disclosure overbreadth and vagueness challenges to a similar regulatory definition. *See Free Speech*, 720 F.3d at 795-96.

**COL 40.** The CRA's "appeal to vote" definition is not overbroad because it lacks the temporal, geographic, and medium limitations that appear in the federal definition of electioneering communication.

**FOF 40.A.** In *WRTL-II*, the Supreme Court did not hold that for speech to qualify as the functional equivalent of express advocacy it must be distributed via the same mediums and cabined in the same temporal and geographic ways as under § 203 of the Bipartisan Campaign Reform Act.

**COL 41.** The CRA's "appeal to vote" definition is not unconstitutionally vague based on Plaintiffs' single hypothetical.

**COL 42.** The fact some cases will "fall close to the line" of regulation is inevitable and does not render a definition vague or overbroad. *Free Speech*, 720 F.3d at 795–96.

**COL 43.** Plaintiffs' citation to one hypothetical does not mean Plaintiffs have met their burden of demonstrating CRA's appeal to vote definition "reaches a substantial amount of constitutionally protected conduct." *Vill. of Hoffman Ests.*, 455 U.S. at 494.

**COL 44.** Even if the "appeal to vote" definition did—hypothetically—reach some speech not considered express advocacy, New Mexico's registration and disclosure requirements would still be constitutional.

**FOF 44.A.** The Tenth Circuit has held, "It follows from *Citizens United* that disclosure requirements can, if cabined within the bounds of exacting scrutiny, reach beyond express advocacy to at least some forms of issue speech." *Indep. Inst. v. Williams*, 812 F.3d 787, 795 (10th Cir. 2016).

**COL 45.** The Court dismisses Count VI with prejudice.

## COUNT VII: "ELECTIONEERING COMMUNICATION" DEFINITION

**COL 46.** CRA's "electioneering communication" definition is not overbroad or unconstitutionally vague.

**FOF 46.A.** CRA defines "independent expenditure" as an expenditure for an advertisement that "refers to a clearly identified candidate or ballot question and is published and disseminated to the relevant electorate in New Mexico within thirty days before the primary election or

15

|              |              |
|:---:|:---|
|              | sixty days before the general election at which the candidate or ballot question is on the ballot." § 1-19-26(N)(3)(c). |
| **FOF 46.B.** | Plaintiffs refer to this definition as the CRA's "electioneering communication" definition. |
| **FOF 46.C.** | CRA's definition of "electioneering communication" is very similar to definitions in federal and Colorado law that have been upheld. *See Independence Institute v. Williams*, 812 F.3d 787, 792-97 (10th Cir. 2016) (upholding Colorado electioneering communication definition); *Citizens United*, 558 U.S. at 318, 369 (upholding disclosure requirements for speech expenditures even if speech "only pertain[s] to a commercial transaction" and does not qualify as express advocacy or its functional equivalent). |
| **COL 47.** | New Mexico's decision to include or exclude various media, including internet communications, from its definition of "independent expenditure" does not render the definition overbroad or vague. |
| **FOF 47.A.** | The following cases provide support for this conclusion: *Citizens United*, 558 U.S. at 326 (explaining it would undermine courts' authority to guess what means of communications are effective for reaching the public, and such line-drawing may be outdated with new technology); *Yamada*, 786 F.3d at 1191 (holding that, regardless of communication's medium, creator of ads had fair notice and disclosure law was not unconstitutionally vague); *Tennant*, 706 F.3d at 283 (concluding there is no constitutional distinction in regulation of print media versus broadcast media); *Ctr. for Indiv. Freedom v. Madigan*, 697 F.3d 464, 492 (7th Cir. 2012) (upholding disclosure law as applied to internet communications). |
| **COL 48.** | Plaintiffs' one hypothetical is not enough to carry their burden of showing a "substantial number" of the applications of CRA's definition of "independent expenditure" are "unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Bonta*, 141 S. Ct. at 2387. |
| **COL 49.** | The Court dismisses Count VI with prejudice. |

### COUNT VIII: "EXPRESSLY ADVOCATE" DEFINITION

|              |              |
|:---:|:---|
| **COL 50.** | New Mexico's regulatory definition of "expressly advocate" is not overbroad or unconstitutionally vague. |
| **FOF 50.A.** | "Expressly advocate" means that the communication contains a phrase including, but not limited to, "vote for," "re-elect," "support," "cast your ballot for," "candidate for elected office," |

16

|  |  |
|---|---|
|  | "vote against," "defeat," "reject," or "sign the petition for," or a campaign slogan or words that in context and with limited reference to external events, such as the proximity to the election, can have no reasonable meaning other than to advocate the election, passage, or defeat of one or more clearly identified ballot questions or candidates. NMAC 1.10.13.7(I). |
| **FOF 50.B.** | New Mexico's regulatory definition of "expressly advocate" is very similar to its federal counterpart. *See* 100 C.F.R. § 100.22. |
| **FOF 50.C.** | The Tenth Circuit has already rejected an overbreadth and vagueness challenge to a similar federal definition. *Free Speech*, 720 F.3d at 794. |
| **FOF 50.D.** | New Mexico's regulatory definition of "expressly advocate" covers some speech that might not fall under the category of express advocacy. |
| **FOF 50.E.** | The Tenth Circuit has held, "It follows from *Citizens United* that disclosure requirements can, if cabined within the bounds of exacting scrutiny, reach beyond express advocacy to at least some forms of issue speech." *Indep. Inst. v. Williams*, 812 F.3d 787, 795 (10th Cir. 2016). |
| **FOF 50.F.** | The definition should nevertheless be upheld based on "the public's interest 'in knowing who is *speaking about a candidate* shortly before an election.'" *Williams*, 812 F.3d at 796 (quoting *Citizens United*, 558 U.S. at 369). |
| **COL 51.** | The Court dismisses Count VIII with prejudice. |
| **COL 52.** | The Court will address the issue of attorneys' fees by separate order. |

Any requested findings of fact or conclusions of law submitted by the parties that are inconsistent with the Court's FOF and COL are rejected, and a separate Final Judgment will be entered under Federal Rule of Civil Procedure 58.

**IT IS SO ORDERED.**

_____
CHIEF UNITED STATES DISTRICT JUDGE