**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

———————————

**REPUBLICAN PARTY OF NEW MEXICO;
REPUBLICAN PARTY OF DOÑA ANA COUNTY;
REPUBLICAN PARTY OF BERNALILLO COUNTY;
RIGHT TO LIFE COMMITTEE OF NEW MEXICO;
NEW MEXICO TURN AROUND;
HARVEY YATES**; and **JALAPEÑO CORPORATION**,

    Plaintiffs,

v.                                                              No: 1:11-cv-900-WJ-KBM

**RAÚL TORREZ**, in his official capacity, New Mexico
Attorney General; **MAGGIE TOULOUSE OLIVER**,
in her official capacity, New Mexico Secretary of State;
and District Attorneys **SAM BREGMAN, GERALD BYERS**,
and **DIANNA LUCE**, in their official capacities,

    Defendants.[1]

**MEMORANDUM OPINION AND ORDER GRANTING IN PART PLAINTIFFS'
MOTIONS FOR ATTORNEY FEES AND EXPENSES**

      **THIS MATTER** comes before the Court following Plaintiffs' Motions (**Docs. 294, 295,**

**296**) for Attorneys' Fees, Defendants' Responses (**Docs. 301 & 302**), and Plaintiffs' Replies and

Supplemental Motions (**Docs. 304, 305, 307, 308**). Having considered the pleadings and the

applicable law, the Court finds that the Motions are well-taken, in part, and therefore shall be

**GRANTED IN PART** and **DENIED IN PART**.

## BACKGROUND

      The instant case is the attorneys fee portion of the Republican Party litigation that has been

moving through this Court since 2010. The Parties are familiar with the facts, so the Court need

---

[1] By operation of Fed. R. Civ. P. 25(d), Attorney General Torrez and District Attorney Bregman have been substituted
into this suit—in their official capacities—in place of their predecessors.

not restate them. Briefly, however, the lawsuit challenged the constitutionality of New Mexico's campaign finance laws. The Plaintiffs sued out of fear from the possible legal enforcement of the contribution-limit provisions. *See Republican Party of N.M. v. King*, 850 F. Supp. 2d 1206, 1211 (D.N.M. 2012), *aff'd*, 741 F.3d 1089 (10th Cir. 2013). This Court issued a preliminary injunction (**Doc. 38**), enjoining the enforcement of two provisions. *Id.* at 1216. Throughout the course of litigation, the Court denied applications[2] for attorneys' fees—on the grounds that such applications were premature (**Doc. 49**).

Ultimately, the Court bifurcated the issue of attorneys' fees relating to the preliminary injunction (**Doc. 38**) from those based on the merits—*i.e.*, the Court's Memorandum Opinion and Order (**Doc. 287**), Findings of Fact and Conclusions of Law (**Doc. 288**), and Final Judgment and Injunction (**Doc. 289**).

Given their partial successes, Plaintiffs now request an award of attorneys' fees for their work. Defendants raise numerous objections (**Docs. 301 & 302**) based on "reasonableness" of the rates and hours. The Court will now address these concerns.

## DISCUSSION

The Court follows a two-step process to determine an award of reasonable attorneys' fees and expenses. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Jane L. v. Bangerter*, 61 F.3d 1505, 1509 (10th Cir. 1995). First, the Court must determine whether an applicant is a "prevailing party" entitled to reimbursement. *Hensley*, 461 U.S. at 429. Second, the Court must determine what is "a reasonable fee." *Blum v. Stenson*, 465 U.S. 886, 897 (1984).

Section 1988 allows attorneys' fees to be awarded to the "party who prevails on or against claims brought under civil rights statutes." *Steinert v. Winn Grp., Inc.*, 440 F.3d 1214, 1221–22

---

[2] The filings relating to the prior attorney fee application are found at **Docs. 39**, **41**, **47**, **48**, and **49**.

(10th Cir. 2006). Because this case was brought under 42 U.S.C. § 1983, the prevailing party is entitled to reasonable attorney's fees and costs. It is settled law that a preliminary injunction may serve as the basis for conferring prevailing-party status, so long as the preliminary injunction provides some of the party's requested relief on the merits. *Kan. Jud. Watch v. Stout*, 653 F.3d 1230, 1238 (10th Cir. 2011). Based on their partial success at the preliminary injunction stage (bolstered by affirmance at the Tenth Circuit) as well as the merits stage, the Court finds that the Plaintiffs are a "prevailing party." **Docs. 38, 287, 288, 289**.

The next step is the "lodestar" analysis. *Hensley*, 461 U.S. at 433; *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992). This initial estimate is calculated by multiplying the number of hours reasonably expended by a reasonable hourly fee—resulting in the lodestar amount. *Blum*, 465 U.S. at 888. The Court may then adjust upward or downward from the lodestar as necessary. *Id.* This calculation does not require "mathematical precision" or "bean-counting." *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306 (3d Cir. 2005). Likewise, "attorneys are not so fungible" that a "once declared [rate] is appropriate for all cases." *Voulgaris v. Array Biopharma, Inc.*, 60 F.4th 1259, 1266 (10th Cir. 2023). Adjustments based on the "results obtained" are also particularly crucial. *Hensley*, 461 U.S. at 434; *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 718 (5th Cir. 1974) (explaining "results obtained" is a consideration). So too is the time value of money—as post-judgment interest and inflation need to be accounted for in some way. *Greene v. Safeway Stores, Inc.*, 2000 U.S. App. LEXIS 8541, at *6 (10th Cir. 2000) (unpublished) (recognizing the necessity to apply different "dates and rates" of interest to different components of a monetary judgment).

The Court concludes there is no dispute that Plaintiff is entitled to recover reasonable attorneys' fees, costs, and expenses. 42 U.S.C. § 1988; 28 U.S.C. § 1920. Here, the issue concerns the reasonableness of Plaintiffs' hours, rates, and billing—which warrant a downward adjustment.

The Court is required to "provide a concise but clear explanation of its reasons for" awarding a certain amount of fees. *Hensley*, 461 U.S. at 437. The Court does so now.

## I. Reasonable Hours and Hourly Rates—Preliminary Injunction

As stated above, the Court arrives at the "lodestar" amount by calculating the number of attorney hours reasonably expended times a reasonable hourly rate. *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998). But the setting of reasonable hourly rates is within the Court's discretion. *Carter v. Sedgwick Cnty., Kan.*, 36 F.3d 952, 956 (10th Cir. 1994). When calculating reasonable attorneys' fees, courts look "to the prevailing market rates in the relevant community." *Blum*, 465 U.S. at 895. Moreover, unless the subject of the litigation is "so unusual or requires such special skills" that only an out-of-state lawyer possesses, "the fee rates of the local area should be applied even when the lawyers seeking fees are from another area." *Jane L.*, 61 F.3d at 1510 (quoting *Ramos v. Lamm*, 713 F.2d 546, 555 (10th Cir. 1983)).

As other courts in this district have recognized, "New Mexico is a relatively poor state, with some of the lowest hourly rates in the country." *O Centro Espirita Beneficente Uniao Do Vegetal in the U.S. v. Duke*, 343 F. Supp. 3d 1050, 1087 n.14 (D.N.M. 2018). Nevertheless, there are a handful[3] of older cases (when adjusted for inflation) that comport with the rates sought by Plaintiffs' counsel here. **Doc. 169-5 at 7**. Plaintiffs billed hourly rates range from $185–$450;

---

[3] *See Knight v. Metzgar*, No. CIV 12-0460, CLERK'S MINUTES, June 18, 2013 (**Doc. 46**) (awarding attorney fees at $375.00 an hour); *Martinez v. Carson*, No. 08-cv-1046, 2011 U.S. Dist. LEXIS 156700, at *10–12 (D.N.M. Aug. 11, 2011) (reducing attorney's requested hourly rate from $450.00 to $350.00); *Mackey v. Staples, Inc.* No. CIV 09-023, 2011 U.S. Dist. LEXIS 157305, at *8 (D.N.M. Mar. 4, 2011) (explaining the "upper end" of fees in New Mexico is $350.00 an hour); *Valdez v. Herrera*, No. 09-668, 2012 U.S. Dist. LEXIS 177639, at *5 (D.N.M. Mar. 21, 2012) (granting an hourly rate of $350.00 for senior attorneys in a voting rights case).

which they assert are "substantially lower than the[ir] standard rate." **Doc. 169-1 at 3**. Plaintiffs filed an affidavit (**Doc. 169-5**) in support of these fees.

Defendants persuasively point out "the simple fact that fees have been awarded up to $450 per hour does not mean that such a rate is the market rate, nor does it offer a basis for all of the other billing rates Plaintiffs seek for less experienced attorneys." **Doc. 301 at 15**.

Plaintiffs' affidavit avers that "the Bopp Law firm has requested rates by grouping attorneys by their years' experience, e.g., 1–5, 6–10, 11–15, 16–20, 21–25, and 31–35 years' experience." **Doc. 169-5 at ¶ 16**. The Court conducted a painstaking review of the 231-page billing statement (**Doc. 294-2**). Tellingly, there are ten[4] attorneys who are billed at rates they never worked while at the Bopp Law Firm (**Doc. 190 at 12–13**). This factors in to the "reasonable hourly rate" calculation. To be clear, the Court takes no issue with the fact the Firm's billable rate structure is tied to each attorney's experience. This is normal. The cause for concern, however, comes from applying the 2020-billable rate to work done by attorneys many years ago at a fee rate they never charged at the firm. For example, if "Attorney A" worked at Bopp Law as a second-year and billed 100 hours in 2011 before leaving the Firm in 2012, it is not "reasonable" for Plaintiffs to receive a windfall by billing "Attorney A" at $285/hour to Defendants as a fourteenth-year lawyer now when she was actually working at $185/hour. Plaintiffs' affidavit in support of the fees further hammers this point home (**Doc. 169-5**). On one hand, Plaintiffs assert that "an hourly rate of $200.00" for associates with less than five years' experience is appropriate—but on the other hand,

---

[4] Randy Elf last completed work in 2018 when he had twenty years' experience. Josiah Neeley completed all of his work as a seventh-year attorney. Anita Woundenberg/Milanovich's last billable hour is from November 2018 when she had fourteen years' experience. Joseph LaRue withdrew from the case in 2011 when he was a fifth year. Kaylan Phillips completed her last billable assignment when she was a fourth year. Joe Vanderhulst completed 1 hour of work in 2011 when he had three years' experience. Zach Kester billed 3 hours in 2010 when he had 1 year experience. Jared Haynie has three billing entries from 2010–2013 when he was, at most, a fourth year. Elizabeth Kosel billed all of her hours as a first year in 2011 (with the exception of 0.6 hours on December 7, 2019). Finally, Noel Johnson was a first and second-year lawyer during all the hours he billed.

Plaintiffs bill Noel Johnson, Elizabeth Kosel, and Joseph LaRue at a "2020 Rate" based on experience at the time of filing irrespective of the fact they only billed hours when they were in the Firm's "1–5 year" rate. **Doc. 169-5 at ¶ 16**.

In making its determination, the Court considers the level of experience and quality of the attorney's performance—among other factors. *Perdue v. Kenny A. ex. rel. Winn*, 559 U.S. 542, 553–54 (2010). Furthermore, a court examines evidence regarding what the market commands for a specific type of litigation. *See Burch v. La Petite Academy, Inc.*, 10 F. App'x 753, 755 (10th Cir. 2001) (unpublished).

Plaintiffs' request attorneys' fees commensurate with the chart below:

| Attorney | Year of Admission | Years of Practice[5] | Hours | | Rate | | Total |
|---|---|---|---|---|---|---|---|
| James Bopp, Jr. | 1973 | 50 | 194 | x | $450 | = | $87,300.00 |
| Richard Coleson | 1987 | 36 | 20.4 | x | $400 | = | $8,160.00 |
| Barry Bostrom | 1987 | 36 | 1.6 | x | $400 | = | $640.00 |
| Randy Elf | 1998 | 25 | 232.1 | x | $375 | = | $87,037.50 |
| Jeffrey Gallant | 2001 | 22 | 104.9 | x | $335 | = | $35,141.50 |
| Josiah Neeley | 2004 | 19 | 4.1 | x | $335 | = | $1,373.50 |
| Anita Woudenberg / Milanovich | 2004 | 19 | 263.1 | x | $335 | = | $88,138.50 |
| Joseph LaRue | 2006 | 17 | 115.8 | x | $285 | = | $33,003.00 |
| Kaylan Phillips | 2008 | 15 | 12 | x | $285 | = | $3,420.00 |
| Joe Vanderhulst | 2008 | 15 | 1 | x | $285 | = | $285.00 |
| Zach Kester | 2009 | 14 | 3 | x | $285 | = | $855.00 |
| Jared Haynie | 2009 | 14 | 1.2 | x | $285 | = | $342.00 |
| Elizabeth Kosel | 2010 | 13 | 167 | x | $235 | = | $39,245.00 |

---

[5] **Doc. 169-5** lists the attorneys' years of experience and rates as of 2020. Three years' experience has been added to each attorney's years of practice.

| Noel Johnson | 2010 | 13 | 193.8 | x | $235 | = | $45,543.00 |
|---|---|---|---|---|---|---|---|
| Justin McAdam | 2011 | 12 | 1.5 | x | $225 | = | $337.50 |
| Courtney Turner / Milbank | 2014 | 9 | 695.1 | x | $225 | = | $156,397.50 |
| Amanda Narog | 2015 | 8 | 1.3 | x | $185 | = | $240.50 |
| Melena Siebert | 2017 | 6 | 4.2 | x | $185 | = | $777.00 |
| Joshua Hershberger & Matthew Michaloski (clerk/intern) | N/A | 0 | 13.8 | x | $85 | = | $1,173.00 |
| Court's calculation | | | 2,030.5[6] | | | = | $589,409.50 |
| Total requested[7] | | | | | | = | $499,807.99 |

## A. Listed attorney rates

It is true that the hourly rate "should reflect rates in effect at the time the fee is being established by the court, rather than those in effect at the time services were performed." *Ramos*, 713 F.2d at 555. But, as alluded to, the fees requested do not align with the attorney's "level of experience." *Perdue*, 559 U.S. at 553–54. Thus, the Court will award fee rates in lockstep with the Bopp Law Firm's fee structure—based on attorneys' experience at the current rate for attorneys in that category. **Doc. 169-5 at ¶ 16**. In so doing, the Court is not awarding fees "in effect at the time services were performed," but instead those in effect today—after considering the Firm's fee structure and attorneys' experience while at the Firm. *Ramos*, 713 F.2d at 555.

---

[6] This figure is potentially inaccurate—because the Plaintiffs did not include a total number of hours worked. Instead, they provided a 231-page "Revised Billing Statement" and relied, it seems, on the Court to calculate "reasonable" hours (**Doc. 294-2**). There is no mention of the total hours worked in the Motion either (**Docs. 169-2 & 294**).

[7] Throughout **Doc. 294-2**, Plaintiffs notated "partial success" reductions ranging from 18.5% to 65%. Plaintiffs "partial success after resolution of claims" is laid out in **Doc. 294-3**. In their motion, the request "For work in pursuit of the PI Order" is listed as $491,566.99 (**Doc. 294 at 5**).

Accordingly, the Court will reduce the fees requested to better align with the Firm's fee structure (**Doc. 301 at 14–17; Doc. 169-5 at 10**). Such a reduction is necessary to ensure the attorneys' hourly rates are reasonable.

### B. Reasonable hours

There are many factors a court uses when assessing if attorney's fees are "reasonable." *See In re Mkt. Ctr. E. Retail Prop.*, 730 F.3d 1239, 1246–47 (10th Cir. 2013) (citing *Johnson*, 488 F.2d at 717–19). In so doing, courts are encouraged to scrutinize hours billed "much as a senior partner in a private firm would review reports of subordinate attorneys when billing clients." *Ramos*, 713 F.2d at 555. As the point of departure, the Court takes no issue with approximately 2,030.5 hours being billed over the course of a decade[8] of litigation. Where Plaintiffs run into trouble, however, is with an absence of "meticulous" record keeping. *Jane L.*, 61 F.3d at 1510. Upon review, the Court is not convinced that some of the billable hours are not excessive, redundant, or otherwise unnecessary. *Hensley*, 461 U.S. at 434. The Tenth Circuit has repeatedly stated "a district court may reduce a requested lodestar as one means to compensate for partial success and defense in hours claimed." *Valdez v. Macdonald*, 66 F.4th 796, 842 (10th Cir. 2023) (citing cases).

If a court is going to reduce requested hours, it must provide a specific reason. *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1203 (10th Cir. 1986). For example, rather than attempt to identify each portion of each entry that possibly constitutes clerical work, the Court may simply reduce the number of hours claimed to remove claims for clerical and administrative tasks. *Fox v. Vice*, 563 U.S. 826, 838 (2011); *Ramos*, 713 F.2d at 553–54. Second, block-billing is a "rather imprecise practice," that tends to be "strong evidence that a claimed amount of fees is excessive."

---

[8] The Plaintiffs have not made it easy for the Court to conclude their fees, expenses, and costs are reasonable. Despite the prior Order (**Doc. 290**) bifurcating work done on the preliminary injunction from work done on the merits, Plaintiffs' billing statement for the preliminary injunction (**Doc. 294**) is 231 pages long and spans from 2010 to 2023 even though the Preliminary Injunction was affirmed by the Tenth Circuit with a mandate issued on January 9, 2014.

*Flying J. Inc. v. Comdata Network, Inc.*, 322 F. App'x 610, 617 (10th Cir. 2009) (citing *Robinson*, 160 F.3d at 1284). In practice, whenever block-billing is identified—a court generally "reduce[s] the number of hours billed" because "the Court is unable to determine the reasonableness of the specific tasks for which attorney's fees are sought." *Pierce v. Atl. Specialty Ins. Co.*, 2017 U.S. Dist. LEXIS 145641, at *8–*9 (D.N.M. Sept. 8, 2017). Finally, hours expended for duplicative services (such as multiple attorneys performing the same tasks) should not be compensated. *Ramos*, 713 F.2d at 553–54.

Here, Plaintiffs request a total attorney fee request of approximately $499,807.99[9] for their attorneys' services in handling the preliminary injunction (**Doc 294 at 6–7; Doc. 294-2 at 231**). While recognizing the litigations skills and positive reputations of Plaintiffs' attorneys, the Court considers the requested amount to be excessive for the reasons listed below.

**1. Block-billing**

On September 10, 2020, the Court issued an Order (**Doc. 190**) explaining that "Plaintiffs' counsel's bill leave much to be desired." *Id.* **at 2**. Back then, Defendants argued that "Plaintiffs should be required to specifically identify the fees" attributable to the prevailing party (**Doc. 173 at 3**). Defendants also suggested that any fees incurred after 2014 should not be permitted—as the claim was no longer contested. *Id.* **at 10**.

In this instant motion, Defendants contend that Plaintiffs' billing statement is both vague and block-billed (**Doc. 301 at 9**). The Court agrees.

Take two examples. First, in January 2014, Randy Elf billed 3.80 hours with the following description: "Revise draft of motion to stay. Draft and revised proposed order E-mail drafts of

---

[9] This figure is from **Doc. 294-2 at 231**. However, the fee work in **Doc. 294** appears to be $508,495.99 (fees minus "expenses"). *See also* **Doc. 304 at 13**. The Court also notes the total amount keeps increasing with each filing— including "supplemental" motions not requested by the Court (**Docs. 307 & 308**).

motion and proposed order to Defendants for their review. Telephone conferences with judge's secretary and law clerk regarding the proposed order. File unopposed motion. E-mail proposed order to curt [sic]." **Doc. 294-2 at 77**. Next, in 2018, Anita Milanovich billed 6.80 hours for "Work on finalizing Summary Judgment brief, Summary Judgment motion, assist Courtney E. Milbank with deposition cites/exhibits." *Id.* **at 178**. At the same time, Courtney billed 5.80 hours for "Finalize memo and motion, update cites, pull depositions excerpts, pull exhibits, begin highlighting exhibits per court rules, finish cutting pages, work with Anita Y. Milanovich regarding deposition cites/exhibits." *Id.* Both of these examples leave the Court utterly clueless as to how much time was allotted to each discreet task. *See Cadena v. Pacesetter Corp.*, 224 F.3d 1203, 1214–15 (10th Cir. 1998) (defining "block billing").

Of note, Plaintiffs' attorneys block-billed more than six hours of work on 36 occasions (**Doc. 294-2**). These billables include such vagaries as "review filings"[10] and "attend deposition."[11] Because so many[12] of these descriptions lump together multiple different tasks and employ broad language, the Court has difficulty ascertaining the reasonableness of the time record as a whole (**Doc. 301 at 11**). *See Flying J. Inc.*, 322 F. App'x at 617. While the Court acknowledges it might be reasonable to put in long, continuous hours in crunch time, the Plaintiffs' billing statement is not sufficiently clear. *Goetz v. Ricketts*, 632 F. Supp. 926, 929–30 (D. Colo. 1986) (citing *Ramos*, 713 F.2d at 552). Billing nonstop periods of time in excess of 6 hours is atypical. *Ramos*, 713 F.2d at 553 ("These totals break down to six to seven billable hours per day."). For this reason, the Court questions figures in "excess of the norm," *id.* at 554, and will therefore reduce the lodestar amount.

---

[10] **Doc. 294-2 at 106**.
[11] **Doc. 294-2 at 158**.
[12] **Doc. 294-2 at 50, 52, 58–9, 69, 72, 106–8, 123–4, 136, 158, 172, 174–8, 186, 189, 228–30**.

**2. Duplicative billing**

Another important factor for consideration when determining the reasonableness of hours expended is the potential duplication of services. *Ramos*, 713 F.2d at 554. For example, if three attorneys are present at a meeting or hearing when one would suffice, "compensation should be denied for the excess time." *Copeland v. Marshall*, 641 F.2d 880, 891 (D.C. Cir. 1980). Similarly, if the same task is performed by more than one lawyer, multiple compensation should be denied. *Ramos*, 713 F.2d at 554.

Relevant here is the fact that more than 600 entries (**Doc. 294-2**) appear to be duplicative billing. For example, both Joseph LaRue and Zachary Kester billed 0.20 hours on July 15, 2010, for a "Conference with [the other person] regarding potential challenge to NM law." **Doc. 294-2 at 1**. In February 2012, Noel Johnson and Richard Coleson billed 0.30 hours for a conference "regarding circumvention theory and claims." *Id.* **at 65**. In 2017, both Courtney Milbank and James Bopp billed for a conference lasting 0.10 hours. *Id.* **at 106**. Courtney and Jeffrey Gallant billed a combined 3.90 hours, for $965, on March 16, 2020, for "texts" and multiple "phone conferences" with one another. *Id.* **at 221–22**.

The Court views this as "strong evidence that [the] claimed amount of fees is excessive." *Flying J. Inc.*, 322 F. App'x at 617. Such billing practices warrant reduction (**Doc. 301 at 11–14**).

**3. Clerical and secretarial work**

The Tenth Circuit does not require a trial court to "scour the time sheets for all the instances of non-legal work." *United States v. $114,700.00 in U.S. Currency*, Nos. 20-1387 & 21-1301, 2023 U.S. App. LEXIS 594, at *13 (10th Cir. 2023) (unpublished). Nevertheless, the Court has engaged in some of this exact "bean-counting." *Voulgaris*, 60 F.4th at 1267.

Defendants contest certain time entries that reflect clerical or secretarial work (**Doc. 301 at 11–14**). The Court agrees that multiple entries (**Doc. 294-2**) are non-compensable clerical work. *Casias v. N.M. Dep't of Corr.*, No. 16-cv-56, 2019 U.S. Dist. LEXIS 111924, at *11 (D.N.M. July 3, 2019) (Carson, J.). Purely clerical or secretarial tasks should not be billed at a paralegal rate— let alone an attorney rate. *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 288 (1989).

Here, the Court identified approximately 100 entries involving downloading, filing, calendaring, printing, and checking the docket (**Doc. 294-2**). These are purely clerical tasks. *Gatson v. Bowen*, 854 F.2d 379, 381 (10th Cir. 1988). Bopp Law Firm mentions no reduction for "non-compensable" time—unlike local counsel, who applied a 52% discount for completing similar tasks (**Doc. 294-4 at 11**).

Specifically, the Court highlights the following: (1) "Download and save Preliminary Injunction filings to P drive," on October 12, 2011; (2) "send to Staples for printing," on August 9, 2018; (3) "Download and save latest filings" for 4.20 hours on November 4, 2011; (4) "Finalize cert of service for discovery responses and file" on May 16, 2018; and (5) and reviewing the calendar. **Doc. 294-2 at 45, 156, 49, 139, 56, 180, 220**. Moreover, because the entries are block-billed, there is no way to perfectly delineate legal work from these clerical tasks. Upon review, it appears these clerical tasks account for 250 hours of billed time.

The Court acknowledges that Plaintiffs are entitled to fees and costs, however, there are no para-professionals, clerical staff, or secretaries billed. Instead, this work is billed at attorneys' rates. *See* 28 U.S.C. § 1920; *Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1249 (10th Cir. 1998); *Ramos*, 713 F.2d at 559.

Accordingly, these fees are excessive (given they are non-compensable when billed by attorneys) and warrant reduction.

**4. Excessive fee petition billing**

The Preliminary Injunction (**Doc. 38**) was filed on January 5, 2012. Yet, Plaintiffs have billed "Fee Petition Work" from January 20, 2012, through October 16, 2023 (**Doc. 294-2**). The Court notates substantial fee petition work was done in 2012, 2013, 2019, 2020, and 2023—in excess of 100 hours (**Doc. 294-2 at 60–65, 77–78, 87–90, 94–95, 196, 202, 218–31**).

A reduction in the lodestar is warranted because Plaintiffs' fees for their fee petition work is excessive (**Doc. 301 at 13**). *See Comm'r, INS v. Jean*, 496 U.S. 154, 163 n.10 (1990) ("[F]ees for fee litigation should be excluded to the extent that the applicant ultimately fails to prevail in such litigation."); *see also Mares*, 801 F.2d at 1207.

**C. Properly calculated lodestar—preliminary injunction**

Originally, the Court had no reason to question that the 2,030.5 hours billed were anything but reasonable (other than the fact the preliminary injunction billing spanned from 2010 to 2023). However, for the reasons mentioned above, reductions are necessary.

The Court notated: (1) clerical actions comprised some percentage of at least 200 hours billed; (2) duplicative billing effected another 150 hours; (3) block-billing another 250 hours; and (4) more than 100 hours billed as fee petition work. In the Court's estimation, between one quarter to one third of the billable hours are not objectively reasonable. Given this percentage of irregularity, the number of hours worked will be reduced by a corresponding 30%. Therefore, instead of 2,030.5 hours of billable hours, the Court will find that 1,421 billable hours are appropriate and reasonable. *See Carter*, 36 F.3d at 956 ("[T]he court may make a general reduction in hours claimed to achieve what the court perceives to be a reasonable number.").

Having established the number of compensable hours, the Court next calculates the reasonable hourly rates. As previously mentioned, the rates requested do not align with the

attorneys' level of experience. Lawyers with under 5 years' experience account for 25% of the billables—and 60% of the work was done by attorneys with under 10 years' experience. The Court takes no issue with the Bopp Law Firm's fee structure (**Doc. 169-5 at ¶ 16**). In fact, the Court utilized the fees to roughly calculate a reasonable rate—applying the Firm's current rates to the attorney's work. Given that (1) 25% of work was completed by attorneys billing $185 or less; (2) 34% of work was completed by attorneys billing $225; (3) 13% of work was completed by attorneys billing $285; (4) 17% of work was completed by attorneys billing $335; and (5) 11% of work was completed by attorneys billing higher than $400, the "average"[13] billable hour rate is $265.

Even though a court need not engage in such a time-consuming enterprise, the lack of specificity regarding a proper lodestar necessitated the Court engage in public math. The calculations above "do rough justice," as required, even if they do not achieve auditing-level perfection. *Fox*, 563 U.S. at 838.

Although the Bopp Law Firm's fee schedule ranges (at the individual attorney level) from $85–$450, the average fee of $265 is in accordance with the prevailing market rates in the community. *Blum*, 465 U.S. at 895. Thus, the properly calculated lodestar is $376,565.00—inclusive of 1,421 hours multiplied by $265. The adjusted number of hours and hourly fee are reasonable, but further reductions are still warranted for partial success.

## D. Partial success reduction

The prevailing party designation belongs to the party, not the lawyers. *Venegas v. Mitchell*, 495 U.S. 82, 87 (1990); *Weeks v. Indep. Sch. Dist. No. 1-89*, 230 F.3d 1201, 1213 (10th Cir. 2000). Plaintiffs' calculations do not properly take this aspect into account. **Docs. 294–294-4**. The Court

---

[13] In calculating this average hourly rate, the Court applied the Firm's fee schedule range—but only applied the highest fee at which each individual attorney billed. *See supra* n. 4.

previously ruled that "NMTA, and NMTA only" was a prevailing party (**Doc. 190 at 10**). Because only one Plaintiff achieved success, "the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate" is excessive. *Jane L.*, 61 F.3d at 1511. Although there is no precise formula, the district court must "make clear" that it considered the relationship between the "fee awarded and the results obtained." *Hensley*, 461 U.S. at 437.

Reducing fees on interrelated claims is particularly messy. *Robinson*, 160 F.3d at 1283. This is especially true in civil rights cases which often involve claims "based on a common core of facts or related legal theories." *Id.* Nevertheless, only one existing Plaintiff is a prevailing party (**Doc. 190 at 10**). Thus, despite the fact Bopp Law represented all of the original[14] Plaintiffs—only one Plaintiff on one issue prevailed. Specifically, only NMTA prevailed and only as to "Count V" regarding "independent expenditures." **Doc. 1 at 2; Doc. 38 at 14; Doc. 301 at 6–11**.

Given that only 1-out-of-10 Plaintiffs succeeded at the preliminary injunction stage on 1-out-of-5 Counts, the Court will reduce the attorneys' fees by 30%. This figure is within the "realm of discretion" this Court has when assessing a reduction for partial success. *See e.g., Jane L.*, 61 F.3d at 1510; *Latin v. Bellio Trucking, Inc.*, 720 F. App'x 908, 911 (10th Cir. 2017) (unpublished).

Having calculated the lodestar amount at $376,565.00, the 30% partial success reduction means the to-be awarded amount of attorneys' fees for the preliminary injunction is $263,595.50. The last adjustment (finally) accounts for inflation[15] occurring since the filing of billable hour rates

---

[14] The original Plaintiffs were: (1) Republican Party of New Mexico; (2) Republican Party of Doña Ana County; (3) Republican Party of Bernalillo County; (4) New Mexico Turn Around ("NMTA"); (5) New Mexicans for Economic Recovery PAC ("NMER"); (6) Harvey Yates; (7) Rod Adair; (8) Conrad James; (9) Howard James Bohlander; and (10) Mark Veteto. **Doc. 190 at 2**.

[15] Notably, Plaintiffs do not request an adjustment for inflation (**Doc. 294-1 at 3**). Instead, Plaintiffs calculated their attorney fee rates as if all work was done in the year 2020—irrespective of how many years' experience the attorney had when completing work or if that attorney is still at the firm. For the reasons mentioned above, as well as the fact no in-Circuit precedent was cited by Plaintiffs, the Court declines to adopt their theory (**Doc. 304 at 11–12**) of inflation and interest. The Court's use of "other mechanisms" coupled with post-2020 inflation is an appropriate adjustment to

in April 2020 (**Doc. 169-5**). The final amount due in attorneys' fees to Bopp Law Firm for work in support of the preliminary injunction is $310,334.00.

## II. Reasonable Hours and Hourly Rates—Merits

As discussed, *supra* ¶ I.A–B, the Court will award fees commensurate with the Firm's fee structure (**Doc. 169-5 at 10**). As for the "reasonableness" of the billable hours—once again, the Court finds Plaintiffs' attorney fee application excessive, redundant, or otherwise unnecessary (in part). *Hensley*, 461 U.S. at 434. The same billing discrepancies in the preliminary injunction billing (**Doc. 294**) exist here (**Doc. 296**). In addition to billing discrepancies, Plaintiffs created additional work for the Court by not heeding its instructions (**Doc. 290 at 2**). As Defendants correctly note:

> Instead of two applications separated by issues, Plaintiffs' conflation has resulted in separate applications that are not actually distinct in any meaningful way. Rather, aside from billing entries devoted to the instant fee petition work, it appears that Plaintiffs' separate billing statements are separated only by date; the billing statements submitted with Plaintiffs' motion for attorney fees related to success at trial merely picks up where the other left off. (*See* **Doc. 296-5 at 1**; **Doc. 294-2 at 230**). Essentially, Plaintiffs have submitted one application in various parts.

**Doc. 301 at 10**. At no point do Plaintiffs provide the Court the total number of hours worked, a lodestar amount, or any meaningful partial success reduction calculations (**Docs. 294, 295, 304, 307, 296, 305, 308**). Instead, as explained below, the Court has done the work of calculating a lodestar and taking appropriate reductions.

There is no doubt that Plaintiffs are a prevailing party—as Plaintiffs "prevailed as to three claims." **Doc. 296-1 at 3**. But again, they only achieved partial success by "prevailing on three of their nine claims." **Doc. 302 at 1**. Here, like above, the fee requested must be reduced based on Plaintiffs' partial success. *Valdez*, 66 F.4th at 842. Prior to this reduction, however, the Court must calculate the lodestar.

---

ensure Plaintiffs are awarded reasonable fees, but not a windfall (**Doc. 301 at 17**). *Jenkins by Agyei*, 491 U.S. at 283; *Mares*, 801 F.2d at 1210.

**A. Block-billing, duplicative billing, and clerical work**

Plaintiffs' Motion for Attorney's Fees (**Doc. 296**) for work done on the merits includes a billing statement (**Doc. 296-5**). In this filing, the total of fees, costs, and expenses for is $229,685.56 (**Doc. 296 at 4**).

As with their preliminary injunction billing, Plaintiffs simply attest to "diligently and accurately recording time spent" and applying appropriate reductions (**Doc. 296-1 at 6; Doc. 296-7; Doc. 302 at 3–4**). Quite obviously, such haphazard billing does not prove or establish "the reasonableness of each dollar, each hour, above zero." *Mares*, 801 F.2d at 1210. The Court now details the examples of poor billing practices that warrant reduction (albeit, in a more abbreviated manner than above).

As for block-billing, Plaintiffs' attorneys block-billed chunks of time in excess of five consecutive hours more than a dozen times (**Doc. 296-5**). It is not impossible to work nonstop for such a period of time; but it is atypical. *Ramos*, 713 F.2d at 553. Additionally, many entries lump together multiple different tasks and employ broad language, the Court has difficulty ascertaining the reasonableness of the time record as a whole (**Doc. 302 at 6**). *See Flying J. Inc.*, 322 F. App'x at 617. For example, 1.70 hours were billed for "E-mail exchange with expert; review final expert report; finalize identification of expert witness and certificate of service for filing; conferences with expert regarding the same; email to opposing counsel; file certificate of service." **Doc. 296-5 at 11**. There are five discreet tasks. Certainly, it could have taken 1.7 hours to do all of those thing—but it also could have taken 0.1 or 0.2 billable hours spaced out over 1.7 hours of the day. The Court is utterly clueless. *Cadena*, 224 F.3d at 1214–15. The same is true for the entry on January 26, 2021 when Courtney billed 2.50 hours to: "Review prior depositions to answer question from James Bopp, Jr.; prepare exhibits for supplemental deposition; draft subpoena and

matters for examination; email to James Bopp, Jr. and Melena Siebert regarding discovery plan and suggestions." **Doc. 296-5 at 13**. Joseph Maughon billed 3.40 hours to: "Review previous exhibits to determine what deposition extracts are still needed in the record; extract same from full deposition transcripts; highlight cited portions per court rules and finalize 5 exhibits for filing." *Id.* **at 60**. Again, this might be accurate—but the Court has no idea because of the use of block-billing. *Team Sys. Int'l, LLC v. Haozous*, 706 F. App'x 463, 464–65 (10th Cir. 2017) (unpublished).

Next, there are over 300 entries containing "conference with" another person—wherein each attorney bills. For example, Courtney Milbank and James Bopp both billed for a "conference" with one another on September 14, 2020 (**Doc. 296-5 at 1**). Courtney and Joseph Maughon billed for "conference[s] . . . regarding case status and needs." *Id.* **at 30**. They billed similarly on November 21, 2022. *Id.* **at 71**. The Court views this billing practice as "strong evidence that [the] claimed amount of fees is excessive." *Flying J. Inc.*, 322 F. App'x at 617. Such billing practices warrant reduction (**Doc. 302 at 4**). *See Lucero v. Trinidad*, 815 F.2d 1384, 1386 (10th Cir. 1987) (affirming reduction of attorney's fees for "duplication of efforts"); *Steffens v. Steffens*, 2000 U.S. App. LEXIS 6912, at *18 (10th Cir. 2000) (unpublished) (affirming district court's reduction of attorney's fees for, in part, excessive billing of "intraoffice and interoffice conferences"); *Avila v. Ratchner*, No. CIV 01-0349, 2010 U.S. Dist. LEXIS 145433, at *10 (D.N.M. Sep. 27, 2010) (disfavoring multiple attorneys billing for office conferences); *Henderson v. Horace Mann Ins. Co.*, 560 F. Supp. 2d 1099, 1118 (N.D. Okla. 2008) (reducing hours billed for interoffice conferences when more than one lawyer billed for the conference time).

Around 50 entries on the billing statement involve downloading, filing, calendaring, and checking the docket (**Doc. 296-5**). These are purely clerical tasks. *Gatson*, 854 F.2d at 381.

Interestingly, the Court notes that there are no para-professionals, clerical staff, or secretaries billed. Instead, this work is billed at attorneys' rates. *See* 28 U.S.C. § 1920; *Case*, 157 F.3d at 1249; *Ramos*, 713 F.2d at 559. Yet, even so, Bopp Law Firm mentions no reduction for "non-compensable" time. *See Auto-Owners Ins. Co. v. Summit Park Townhome Ass'n*, 886 F.3d 863, 874 (10th Cir. 2018) (approving of firm's "discounting hours worked by paralegals and secretaries"). Although compensable tasks for a para-professional or secretary, attorneys cannot bill for clerical tasks. *Id.* Here, rather than attempt to identify each portion of each entry that possibly constitutes clerical work, the Court will simply reduce the number of hours claimed to remove claims for clerical and administrative tasks. *Fox*, 563 U.S. at 838; *Ramos*, 713 F.2d at 553–54. These billing practices are excessive and warrant reduction.

Finally, the Court notes that Plaintiffs billed "Fee Petition Work" in 2020—three years before it was known what claims Plaintiff would prevail on (**Doc. 302 at 7**). Approximately 35 hours have been billed thus far on the fee petition for success on the merits (**Doc. 296-5 at 2–6 & 105–07**). A reduction in the properly calculated lodestar is warranted. *See Mares*, 801 F.2d at 1207.

## B. Properly calculated lodestar

Bopp Law provided approximately 1,400 billing entries spanning from September 10, 2020, until October 16, 2023, for its work on the merits. This 107-page document (**Doc. 296-5**) accounts for approximately 1,172.6 hours of work (834.55 of which are deemed billable). Given the issues with billing detailed above, the Court finds that these hours are not reasonable. At its core, the billing does not prove or establish "the reasonableness of each dollar, each hour, above zero." *Mares*, 801 F.2d at 1210. Accordingly, the Court will reduce the amount of hours by 30% for a total number of "reasonable" hours of work equaling 820 (from the billed amount of 1,172).

*See Valdez*, 66 F.4th at 842 (explaining a court may reduce the lodestar as one means to compensate for defects in hours claimed).

Having established the number of compensable hours, the Court next calculates the reasonable hourly rates. Regarding work on the merits, approximately 88% of the work was completed by attorneys with under 10 years' experience (**Doc. 169-5 at 10; Doc. 296-5**). Again, the Court takes no issue with the Bopp Law Firm's fee structure (**Doc. 169-5 at ¶ 16**). However, the only rates billed for work on the merits are: $450, $335, and $225. Given that (1) 88% of work was completed by attorneys billing $225; (2) 3% of work was completed by attorneys billing $335; and (3) 9% of work was completed by attorneys billing higher than $400, the "average" billable hour rate is $240. The Court finds this is a reasonable fee.

In sum, the appropriate lodestar for attorneys' fees on the merits (**Doc. 296**) is $240 times 820 hours for a total of $196,800. Again, this lodestar is just the point of departure—as the Court has not yet taken into account the reduction for Plaintiffs' partial success.

## C. Partial success

Regarding partial success, the Defendants are spot on. The Plaintiffs' method of accounting for partial success is "unworkable and difficult to review." **Doc. 302 at 4**. It is also incredibly inconsistent. *Id.* Sometimes partial success for billing entries devoted to the "findings of fact and conclusions of law" are 50% reduced; yet other times the billables have no reduction (**Doc. 302 at 4–5** (citing **Doc. 296-7**)). A district court is not required to "conduct a line-by-line analysis" of the claimed fee. *Thames v. Evanston Ins. Co.*, 665 F. App'x 716, 723 (10th Cir. 2016) (unpublished). But Plaintiffs' billing records leave the Court no choice. On their face, the records are wholly inadequate in assisting this Court in evaluating the propriety of the fee request. *Flitton v. Primary Residential Mortg., Inc.*, 614 F.3d 1173, 1178 (10th Cir. 2010).

20

Considering Plaintiffs succeeded on 3-out-of-9 claims, it seems impossible that only 374 of the 1,400 billing entries were on unsuccessful claims (**Doc. 296-5**). Although two-thirds of Plaintiffs' claims were unsuccessful, the Court must make a "qualitative assessment" as to the interplay between the successful and unsuccessful claims. *Jane L.*, 61 F.3d at 1510. In making this "equitable judgment," the Court has discretion. *Hensley*, 461 U.S. at 436–37. Here, an award of the full requested amount would be "excessive." *Garcia v. Tyson Foods, Inc.*, 770 F.3d 1300, 1311 (10th Cir. 2014). There is "no precise rule or formula" for determining attorney's fees—and the partial reduction need not be reduced in mathematical precision to the success. *Zisumbo v. Ogden Reg'l Med. Ctr.*, 801 F.3d 1185, 1208 (10th Cir. 2015); *Flitton*, 614 F.3d at 1177.

Accordingly, the Court will reduce the attorneys' fees by 30% based on Plaintiffs' partial success on the merits. *Iqbal v. Golf Course Superintendents Ass'n of Am.*, 900 F.2d 227, 228 (10th Cir. 1990) (affirming a reduction of "thirty percent to reflect the [Plaintiff's] limited success").

Having calculated the lodestar amount at $196,800.00, the 30% partial success reduction means the to-be awarded amount of attorneys' fees on the merits is $137,760.00. The final adjustment accounts for inflation occurring since the filing of billable hour rates in April 2020 (**Doc. 169-5**). The final amount due in attorneys' fees to Bopp Law Firm for success on the merits is $162,186.88.

## III. Expenses, Costs, and Local Attorney Fees

Much like the litigation, the Court's analysis is almost complete. The remaining issues in Plaintiffs' motions involve expenses, costs, and local attorneys' fees. Along with the fees and expenses allowed under Section 1988, a prevailing party in a civil rights action is also entitled to costs. *Case*, 157 F.3d at 1249 (citing *Jane L.*, 61 F.3d at 1517).

Naturally, Plaintiffs request recoupment of costs under 28 U.S.C. § 1920 and 42 U.S.C. § 1988. **Docs. 294 & 296**. Plaintiffs included two documents (**Doc. 164-5 & 169-3**) in support of their costs and expenses at the Preliminary Injunction stage (**Doc. 294**). When awarding costs and expenses, the Court is required to conduct a reasonableness analysis. Of note, Defendants oppose out-of-area counsel's travel (**Docs. 301 & 302**). The Court agrees that these expenses are not typically reimbursable. *Ramos*, 713 F.2d at 559. After Defendants raised this argument, however, Plaintiffs adjusted for and reduced the costs associated with travel (**Docs. 304, 305, 307, 308**). The next issue with costs and expenses involves Noel Johnson's admission fee to the Bar of the Tenth Circuit Court of Appeals and Jeffrey Gallant's *pro hac vice* fee (**Doc. 164-5 at 7, 21**). Neither are reimbursable. *See Awad v. Ziriax*, No. CIV-10-1186, 2014 U.S. Dist. LEXIS 53045, at *5 n.2 (W.D. Okla. Apr. 17, 2014) (explaining the Tenth Circuit has not ruled on whether *pro hac vice* fees may be awarded as costs); *Conell v. Kijakazi*, No. 21-cv-233, 2022 U.S. Dist. LEXIS 192436, at *9 (D.N.M. Oct. 20, 2022) (noting that a "narrow reading" of § 1920 precludes reimbursement of *pro hac vice* fees); *Plascencia v. City of St. George*, No. 07-cv-2, 2013 U.S. Dist. LEXIS 114253, at *10 (D. Utah Aug. 13, 2013) (declining to reimburse costs associated with admission into the Tenth Circuit). Finally, the Court will reduce the electronic research costs—because the Court is unable to "separate research related to the [Plaintiffs'] prevailing claims from research on claims which they lost." *Case*, 157 F.3d at 1258. Entries for costs associated with "research on Supplemental Deposition" and "research cases cited by Defendants" may (or may not) be associated with the Plaintiffs' prevailing party status (**Doc. 164-5 at 11**). Plaintiffs' requested costs and expenses will be reduced by 15% from $14,424.45 to $12,260.78.

Next, the Court takes issue with Plaintiffs' billing of costs and expenses on the merits (**Doc. 296-6**). Although Plaintiffs request recoupment of costs under both 28 U.S.C. § 1920 and 42

U.S.C. § 1988, neither statute allows for reimbursement of expert fees in a Section 1983 case. *See W. Va. Univ. Hosps., Inc. v. Casey*, 499 U.S. 83, 87 (1991) ("None of the categories of expenses listed in § 1920 can reasonably be read to include fees for services rendered by an expert employed by a party in a nontestimonial advisory capacity."); *Rimini St., Inc. v. Oracle USA, Inc.*, 139 S. Ct. 873, 878 (2019) (holding Section 1988 does not authorize awards of expert witness fees); *Cleverock Energy Corp. v. Trepel*, 609 F.2d 1358, 1363 (10th Cir. 1979) (refusing to interpret § 1920 to include expert witness fees); *Gray v. Phillips Petroleum Co.*, 971 F.2d 591 (10th Cir. 1992) (finding expert witness fees were not recoverable); *Rios v. Stupka*, 1992 U.S. App. LEXIS 14251, at *5 (10th Cir. 1992) (unpublished) ("The plain language of § 1988(c) demonstrates that it applies only to actions brought under § 1981 or § 1981a . . . . Because this action was brought pursuant to § 1983, [Plaintiffs are] not entitled to an expert witness fee."). In fact, federal courts have consistently held that "prevailing parties in Section 1983 cases cannot recover expert witness fees." *Webster v. Fulton Cnty. Ga.*, 112 F. Supp. 2d 1339, 1380 (N.D. Ga. 2000) (collecting cases). Accordingly, $17,800.00 in costs to "Jeffrey Milyo, Ph.D." are not reimbursable (**Doc. 296-6 at 1, 4**). The remaining costs and expenses are $6,342.58. Again, however, the Court cannot discern which costs are associated with the Plaintiffs' prevailing party status. This amount will be reduced by another 15% for a total amount of $5,391.19 for costs and expenses on the merits (**Doc. 296-6**).

Next, the local attorney fees for Mr. Paul Kienzle III (**Doc. 294-4**) are reasonable. As the Court previously mentioned, *supra* ¶ I.B.3, reductions were already applied in his billing statement. The attorney fees for Carter Harrison, however, will be reduced by a modest 5%. Unlike Mr. Kienzle, Mr. Harrison's billables were not reduced for completing non-compensable clerical tasks (**Doc. 296-3**). Aside from this slight reduction, the requested attorneys' fees for local counsel are otherwise awarded in full.

## CONCLUSION

After extensive review of the briefing on these motions, the Court concludes that there are sufficient bases to reduce the requested attorneys' fees. *See Valdez*, 66 F.4th at 836–37; *Zisumbo*, 801 F.3d at 1208; *In re Williams Sec. Litig.—WCG Subclass*, 558 F.3d 1144, 1148 (10th Cir. 2009). The specific reason for each reduction was, likewise, sufficiently explained. *Mares*, 801 F.2d at 1201; *Ramos*, 713 F.2d at 552. Thus, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' motions.

 **IT IS ORDERED** as follows:

(1) Plaintiffs Motion for Attorneys' Fees and Costs (**Doc. 294**) is **GRANTED** as follows:

 (a) Bopp Law Firm is awarded $310,334.00 in attorneys' fees;

 (b) Plaintiffs' local counsel, Paul Kienzle III, is awarded $10,997.29;

 (c) Plaintiffs are awarded $12,260.78 in costs and expenses.

(2) Plaintiffs Motion for Attorneys' Fees and Costs (**Doc. 296**) is **GRANTED** as follows:

 (a) Bopp Law Firm is awarded $162,186.88 in attorneys' fees;

 (b) Plaintiffs' local counsel, Carter Harrison, is awarded $5,947.00;

 (c) Plaintiffs are awarded $5,391.19 in costs and expenses.

 All claims and issues in the above captioned case having been resolved, this case is hereby closed. Finally, this Memorandum Opinion and Order Granting in Part Plaintiffs' Motions for Attorneys' Fees and Expenses is a Final, Appealable Order.

_____
CHIEF UNITED STATES DISTRICT JUDGE